1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7             FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   THEODORE W. MORT,                    No.  1:19-cv-00652-NONE-SKO

10              Plaintiff,

11        v.                             ORDER RE: PLAINTIFF'S MOTION TO
                                         COMPEL
12   MEGAN J. BRENNAN, POSTMASTER
     GENERAL UNITED STATES POSTAL        (Doc. 18)
13   SERVICE,

14              Defendant.

15

16         This matter is before the Court on Defendant Megan J. Brennan, Postmaster General

17   United States Postal Service ("Defendant")'s motion to compel, filed August 12, 2020 ("Motion

18   to Compel").  (Doc. 18.)  Plaintiff Theodore Mort and Defendant filed their joint statement

19   directed to the Motion to Compel, as required by this Court's Local Rule 251, on August 26,

20   2020.  (Doc. 22.)  The Court reviewed the parties' papers and all supporting material and found

21   the matter suitable for decision without oral argument.  The hearing set for September 2, 2020,

22   was therefore vacated.  (Doc. 23.)

23         Having considered the parties' briefing, and for the reasons set forth below, the Motion to

24   Compel will be granted.

25                            I.      BACKGROUND

26   A.    Factual Background

27         Plaintiff brings this lawsuit asserting claims for retaliation under Title VII of the Civil

28
                                        1

1    Rights Act of 1964 and for disability discrimination under the Americans with Disabilities Act
2    and the Rehabilitation Act of 1973 in connection with the termination of his employment as a
3    Postal Inspector with the United States Postal Inspection Service ("USPIS"), the law
4    enforcement arm of the United States Postal Service (the "Postal Service").  (Doc. 1 ("Compl.").)

5         In his complaint, Plaintiff alleges that he was discriminated and retaliated against
6    following a September 4, 2011 visit to his home by his USPIS supervisor Mack Gadsden, Jr.
7    ("Gadsden") (hereinafter the "September 4th incident").  (Compl. ¶¶ 19–20.)  Plaintiff alleges in
8    his complaint that he was not at home at the time of the September 4th incident, which occurred
9    over the Labor Day weekend, having taken "pre-approved time off ordered by Gadsden."  (*Id*. ¶
10   18, 20.)  He claims that a neighbor saw Gadsden that morning, who later informed Plaintiff that a
11   "strange black male" had entered Plaintiff's property and banged "very loud[ly]" on the windows
12   and doors.  (*See* Doc. 22 at 2 and Doc. 22-2 (Ex. B); Compl. Ex. A at 2.)

13        Plaintiff later filed a police report and obtained an ex parte temporary restraining order
14   against Gadsden based on Plaintiff's statements regarding the September 4th incident.  (Compl.
15   ¶¶ 30, 34; Doc. 22 at 2; Doc. 22-1 (Ex. A); Doc. 22-2 (Ex. B).)  Plaintiff stated in the police
16   report that Gadsden was a "fellow employee" who "was upset that he had to drive 2-3 hours . . .
17   for a work-related incident . . . because I was unavailable/unable to respond to his repeated calls,
18   so he entered my private property (closed/latched gate) beat on my doors/windows in apparent
19   anger/attempt to enter my house (failing to locate me) that he had to respond to the incident . . .
20   in the performance of his employment."  (Doc. 22-2 (Ex. B) at 3.)   Plaintiff reported that
21   Gadsden was "in violation of Trespassing" on his private property and cracked one of his
22   windows "in an apparent fit of rage/anger or an attempt to gain entry into my residence unable to
23   open doors."  (*Id*.)  Plaintiff further reported that the neighbor who allegedly witnessed this
24   incident "demands to remain anonymous."  (Doc. 22-2 (Ex. B) at 3.)  In his request for an ex
25   parte temporary restraining order, Plaintiff described Gadsden as a "coworker" who "trespassed
26   (while armed with a firearm) on my residence [sic] property (closed/latched back yard) and beat
27   on my doors/windows causing a window to crack."  (Doc. 22-1 (Ex. A.) at 3.)

28        The Postal Service's Inspector General investigated Plaintiff's statements made in his

police report and temporary restraining order.  (Doc. 22 at 2–3; Compl. Ex. A at 5–6.)  During the investigation, Plaintiff refused to identify the neighbor who allegedly reported the September 4th incident to him.  (Doc. 22 at 3.)  Following its investigation, the Postal Service determined that Plaintiff "demonstrated a lack of candor in his police department and court filings and that he refused to cooperate in the agency's investigation of the issue."  (Doc. 22 at 3; Compl. Ex. A at 5.)  According to Defendant, Plaintiff's employment was terminated for these reasons.  (*Id.*)

Plaintiff alleges in his complaint that his termination based on "alleged inaccuracies in a police report he filed related to Gadsden's unlawful trespassing into the secured privacy fenced back yard of his property" was "retaliatory and unlawful."  (Compl. ¶ 65.  *See also id.* ¶ 87.)

**B.     Procedural Background**

Defendant moves to compel Plaintiff to amend his responses to Defendant's Interrogatories No. 4 and 15 to provide: (1) the identity of the neighbor who informed him that a "strange black male had gone in and out of [his] backyard and beaten on [his] doors" on September 4, 2011, (Interrogatory No. 4); and (2) "where [he] was on September 4, 2011, and who was with [him]" (Interrogatory No. 15).  (Doc. 22 at 3–6; Doc. 22-2 (Ex. C) at 10, 27.) Defendant asserts that this information is relevant to Plaintiff's employment discrimination claims, which "challenge the legitimacy of USPIS's reasons for ending Plaintiff's employment" due to lack of candor.  (Doc. 22 at 3.)

Plaintiff objects to the interrogatories as "not reasonably calculated to lead to the discovery of admissible evidence," "unduly burdensome," "violative of confidential informant confidentiality," "violating the attorney work product doctrine," "compound," "beyond the scope of permissible discovery," and "invading privacy."  (Doc. 22-2 (Ex. C) at 10, 27.)  In the parties' joint statement, Plaintiff asserts that Defendant's attempt to seek this information amounts to a "fishing expedition" to pursue discovery in support of an "after-acquired evidence defense," which is not pleaded in Defendant's answer and where there is "no basis for believing that wrong-doing will be revealed."  (Doc. 22 at 7–9.)  Plaintiff further contends that the requested information should not be disclosed because "Defendant's intended aim to impeach [P]laintiff's credibility with proofs of prior inconsistent statements on how he became aware of the fact his

1   supervisor came to his home is prohibited under Federal Rules of Evidence Rule 608(b)."   (*Id.* at

2   9–10.)

3                                   **II.        LEGAL STANDARD**

4          Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any nonprivileged

5   matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Information

6   within the scope of discovery "need not be admissible in evidence to be discoverable."  *Id.*  A

7   "relevant matter" under Rule 26(b)(1) is any matter that "bears on, or that reasonably could lead

8   to other matters that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund,*

9   *Inc. v. Sanders*, 437 U.S. 340, 351, (1978).  Relevancy should be "construed 'liberally and with

10  common sense' and discovery should be allowed unless the information sought has no

11  conceivable bearing on the case."  *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal.

12  1995) (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)).

13         "The party seeking to compel discovery has the burden of establishing that its request

14  satisfies the relevancy requirements of Rule 26(b)(1).  Thereafter, the party opposing discovery

15  has the burden of showing that the discovery should be prohibited, and the burden of clarifying,

16  explaining or supporting its objections."  *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL

17  1390794, at *1 (S.D. Cal. May 14, 2009) (citations omitted).  The Court is vested with broad

18  discretion to manage discovery.  *See Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir.

19  2012); *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

20                                  **III.        DISCUSSION**

21  **A.     The Information Sought is Relevant and Within the Scope of Discovery**

22         As set forth above, Plaintiff claims he was terminated from the Postal Service for

23  "alleged inaccuracies" in the police report and court documents he filed regarding the September

24  4th incident.  (Compl. ¶ 65.  *See also id.* ¶ 87.)  Plaintiff has therefore placed at issue the

25  accuracy of these documents, including statements he made regarding how he learned of the

26  September 4th incident and his whereabouts on that day.  Information about the accuracy, or lack

27  thereof, of these statements is directly relevant to Plaintiff's claim that his termination as a result

28

                                                4

of the alleged inaccuracies was "retaliatory and unlawful" and to Defendant's defense to that claim.  *See* Fed. R. Civ. P. 26(b)(1).  As Defendant points out, Plaintiff cannot challenge an adverse employment decision as invalid and at the same time claim that information that bears on the validity of that employment decision is irrelevant.  Just as information bearing on whether the termination of Plaintiff was pretextual is relevant, so too is information bearing on whether the termination was for legitimate reasons.

The information sought by Defendants Interrogatories No. 4 and 15 has relevance independent of any affirmative defense Defendant may plead.  Contrary to Plaintiff's assertions, the after-acquired evidence defense does not apply to Defendant's effort to obtain this discovery. The after-acquired evidence defense is an equitable doctrine that limits a plaintiff's remedies for wrongful discharge when an employer discovers that the plaintiff committed an act of wrongdoing prior to being terminated and that the "wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."  *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361–62 (1995).  "By definition, after-acquired evidence is not known to the employer at the time of the allegedly unlawful termination or refusal to hire."  *Canupp v. Children's Receiving Home of Sacramento*, 181 F. Supp. 3d 767, 797 (E.D. Cal. 2016) (quoting *Salas v. Sierra Chemical Co.*, 59 Cal. 4th 407, 430 (2014)).  It is evidence of misconduct that is <u>unrelated</u> to the employer's decision to terminate the plaintiff.  *See McKennon*, 513 U.S. at 359–60 ("McKennon's misconduct was not discovered until after she had been fired.  The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."); *Peterson v. Nat'l Sec. Techs.*, LLC, No. 12-CV-5025-TOR, 2013 WL 1758857, at *11 (E.D. Wash. Apr. 24, 2013) (finding the after-acquired evidence defense applied where the employer made the decision to terminate the plaintiff while an investigation into unrelated misconduct was on-going, and the misconduct under investigation did not play a part in the employer's decision to terminate the plaintiff.). *Accord Delli Santi v. CNA Ins. Co.*, 88 F.3d 192 (3rd Cir.1996) (When an employer has reason to know of the wrongful conduct prior to the date of termination, the alleged conduct cannot be

5

1  utilized as "after-acquired" evidence).

2      Here, the Postal Service had reason, as a result of its investigation, to know of Plaintiff's

3  alleged lack of candor in his police report and court filing.  (*See* Doc. 22 at 3; Compl. Ex. A at

4  5.)   More importantly, that alleged lack of candor was, according to Defendant, the reason why

5  Plaintiff was terminated.  (Doc. 22 at 2–3; Compl. Ex. A at 5–6.)  Because Plaintiff's alleged

6  misconduct was known prior to his termination and was the stated reason for his termination, the

7  after-acquired evidence doctrine is inapplicable, and Defendant's failure to plead or prove it does

8  not preclude discovery of the information sought by Interrogatories No. 4 and 15.[1]

9      In addition, the fact that Defendant did not seek or raise the need for the information

10  sought by Interrogatories No. 4 and 15 during the parties' prior administrative proceeding does

11  not "estop" Defendant from seeking that information in this case.  (*See* Doc. 22 at 8.)  It is well

12  established that the scope of discovery in a civil action is governed by Fed. R. Civ. P. 26(b)(1)

13  and is not limited to the scope of administrative discovery conducted before commencement of

14  the action.  *Equal Employment Opportunity Comm'n v. Hickey-Mitchell Co.*, 372 F. Supp. 1117,

15  1121 (E.D. Mo. 1973).  *See Washington v. United States Dep't of Homeland Sec.*, No. 4:19-CV-

16  5210-RMP, 2020 WL 4667543, at *7 (E.D. Wash. Apr. 17, 2020) (permitting discovery beyond

17  the administrative record as "appropriate under the broad standard provided by Fed. R. Civ. P.

18  26").

19      Based on the foregoing, the Court therefore finds that the information sought by

20  Interrogatories No. 4 and 15, *i.e.*, the identity of Plaintiff's neighbor who allegedly informed him

21  of the September 4th incident and his whereabouts and companion(s) on that day, is relevant and

22  within the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).  *Oppenheimer*, 437 U.S. at

23  351; *Soto*, 162 F.R.D. at 610.

24  **B.    Plaintiff Has Waived its Objections and Has Not Otherwise Shown the Information
        Sought Should be Prohibited**

25

---

26  [1] Plaintiff appears to suggest that because "there is no dispute" that Gadsden "came to Plaintiff's home" and that
    Plaintiff "was not on duty [on] the date in question," Defendant is not entitled to the information sought by
27  Interrogatory Nos. 4 and 15.  The Court can find no authority, and Plaintiff cites none, for this proposition.
    Moreover, a lack of dispute on these issues is belied by Defendant's answer denying Plaintiff's allegation that
28  Gadsden told him "don't worry about any duty calls" over the Labor Day weekend.  (*See* Doc. 9 ¶ 18.)

Although Plaintiff made numerous general and boilerplate objections to Interrogatories No. 4 and 15 (*see* Doc. 22-2 (Ex. C) at 10, 27), Plaintiff discusses only two objections in the parties' joint statement: relevancy and scope of discovery.  (*See* Doc. 22 at 7–10.)  Thus, Plaintiff has waived those objections not addressed in the joint statement.  *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009).  Even if not waived, Plaintiff's unexplained and boilerplate objections of "unduly burdensome" and "compound" are improper.  *See Burlington N. & Santa Fe Ry. Co. v. United States Dist. Ct. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("We hold that boilerplate objections or blanket refusals . . .  are insufficient to assert a privilege."); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir.1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper-especially when a party fails to submit any evidentiary declarations supporting such objections.").

Plaintiff's other waived objections are insupportable, such as the confidential informant privilege, which allows **the government** to withhold from disclosure the "identity of persons who furnish information of violations of law to officers charged with enforcement of that law," *Roviaro v. United States*, 353 U.S. 53, 59–60 (U.S. 1957), and the work product doctrine, which does not protect **facts**, even if contained within the work product, *see Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003).  Further, while Plaintiff may assert a right to privacy in responding to discovery requests, the Court finds that Defendant's need for the information outweighs Plaintiff's unsubstantiated claim of privacy.  *See Lopez v. Flores*, No. 1:08-cv-01975-LJO, 2013 WL 2385240, at *4 (E.D. Cal. May 30, 2013) ("[T]he right to privacy does not serve as an absolute bar and the court must balance the need for the information against

7

the claimed privacy right.") (internal quotations omitted).   For these reasons, Plaintiff's objections to Interrogatories No. 4 and 15 are overruled.

Finally, Plaintiff's argument that Federal Rule of Evidence 608(b) bars discovery of the information sought by Interrogatories No. 4 and 15 is unavailing.[2]   Discoverable information under Rule 26(b)(1) need not be admissible.  *See* Fed. R. Civ. P. 26(b)(1).  "The purpose of discovery is to gain access to information that will lead to admissible evidence, not to gain access only to admissible evidence." *Awosika v. Target Corp.*, CASE NO. 11-0185-RSM, 2011 WL 13048452, at *3 (W.D. Wash. May 26, 2011).  The admissibility, or lack thereof, of any evidence discovered regarding Plaintiff's character or credibility may be dealt with in a motion in limine—it is not a basis to resist discovery of such evidence under Rule 26(b)(1).

## IV.      CONCLUSION AND ORDER

For the reasons set forth above, Defendant's Motion to Compel (Doc. 18) is GRANTED. Within fourteen (14) days of the date of this order, Plaintiff shall serve amended answers, without objections, to Defendant's Interrogatories No. 4 and 15.

IT IS SO ORDERED.

Dated:   **September 24, 2020**                        /s/ *Sheila K. Oberto*
                                                       UNITED STATES MAGISTRATE JUDGE

---

[2] Rule 608(b) provides that:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.  By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

Fed. R. Evid. 608(b).