McGREGOR W. SCOTT
United States Attorney
VICTORIA L. BOESCH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900
victoria.boesch@usdoj.gov

Attorneys for Postmaster General Brennan

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE W. MORT, a individual,<br><br>Plaintiff,<br><br>v.<br><br>MEGAN J. BRENNAN, POSTMASTER GENERAL UNITED STATES POSTAL SERVICE, and DOES 1-10, Inclusive,<br><br>Defendant. | CASE NO.  1:19-cv-00652-LJO-SKO<br><br>**FIRST AMENDED ANSWER TO COMPLAINT** |

The Postmaster General hereby answers the complaint of Plaintiff Theodore W. Mort.

1.      This paragraph contains characterizations of Plaintiff's complaint and legal conclusions requiring no response.  Defendant denies the remaining allegations in this paragraph.

2.      Deny.

3.      Deny.

4.      Deny.

5.      This paragraph contains conclusions of law, to which no response is required.

6.      This paragraph contains conclusions of law, to which no response is required.

7.      This paragraph contains conclusions of law, to which no response is required.

FIRST AMENDED ANSWER TO COMPLAINT

8.      Defendant lacks sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

9.      Defendant admits that the United States Postal Service (USPS) is a federal agency and that it employs people.

10.     Admit.

11.     Deny.

12.     Defendant admits only that Plaintiff was placed on administrative leave on or about September 16, 2011, pending medical documentation and on October 13, 2011, pending an investigation by the USPS - Office of Inspector General (hereinafter "USPS –OIG).  Defendant denies the remaining allegations in this paragraph.

13.     Deny.

14.     Defendant admits that Plaintiff completed a standard periodic USPS medical examination on or about January 17, 2011, and that the examination did not reveal any physical conditions that precluded Plaintiff from continuing to work. Defendant denies the remaining allegations in this paragraph.

15.     Defendant admits that Plaintiff met with Mack Gadsden Jr. in late August 2011. Defendant also admits that, due to a USPS hiring freeze, Plaintiff was temporarily the only U.S. Postal Inspector domiciled in Fresno, CA.  Defendant denies the remaining allegations in this paragraph.

16.     Defendant admits that Plaintiff met with Mack Gadsden Jr. in late August 2011. Defendant denies the remaining allegations in this paragraph.

17.     Deny.

18.     Deny.

19.     Defendant admits only that on September 4, 2011, Team Leader Mack Gadsden Jr. and Inspector Jennifer Hiland stopped briefly at Plaintiff's residence on their way to the Fresno Police Department. While there, Gadsden knocked on the front and back doors of the residence in an attempt to locate Plaintiff.  Several hours later, Gadsen and Hiland again stopped briefly at Plaintiff's residence and Gadsen knocked on Plaintiff's front door.  Defendant denies the remaining allegations in this paragraph.

20.     Deny.

FIRST AMENDED ANSWER TO COMPLAINT

21.     Defendant admits only that Gadsden attempted to contact Plaintiff and left him a voicemail, that Plaintiff returned Gadsden's call on or about September 6, 2011, and that Gadsden directed Plaintiff to report to Stockton for a meeting.  Defendant denies the remaining allegations in this paragraph.

22.     Defendant admits only that Plaintiff traveled to Stockton, CA to meet with Gadsden and that Gadsden was armed, as was the Plaintiff, as required by Inspection Service policy.  Defendant denies the remaining allegations in this paragraph.

23.     Deny.

24.     Defendant admits only that Plaintiff requested sick leave in or about early September 2011, that the requested sick leave was approved, and that Plaintiff did not have allegations of leave abuse leveled against him that it is currently aware of prior to early September 2011.  Defendant denies the remaining allegations in this paragraph.

25.     Defendant admits only that Plaintiff filed an online complaint with the USPS-OIG. Defendant denies the remaining allegations in this paragraph.

26.     Defendant admits only that Plaintiff met with Inspector in Charge Adam Behnen in Richmond, CA on or about September 16, 2011, and that, subsequent to the meeting, Plaintiff was placed on paid Administrative Leave so that a determination could be made regarding the sufficiency of his medical documentation to return to work.  Defendant denies the remaining allegations in this paragraph.

27.     Deny.

28.     Defendant admits only that Behnen went on leave and Assistant Inspector in Charge Anthony Galetti served as Acting Inspector in Charge during Behnen's absence.  Defendant denies the remaining allegations in this paragraph.

29.     Defendant admits that, in accordance with policy and practice, Plaintiff was required to surrender his firearm, badge, credentials, and other accountable property while on paid Administrative Leave.

30.     Defendant admits only that Plaintiff filed a police report.  Defendant denies the remaining allegations in this paragraph.

31.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

32.     Defendant admits only that Plaintiff filed another police report.  Defendant denies the remaining allegations in this paragraph.

33.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph concerning Plaintiff meeting with his doctor and denies them on that basis.  Defendant denies the remaining allegations in this paragraph.

34.     Defendant admits only that Plaintiff requested and obtained an ex parte temporary restraining order against Gadsden.  Defendant asserts that Plaintiff omitted numerous material facts in doing so.  Defendant denies the remaining allegations in this paragraph.

35.     Defendant admits only that on or about October 7, 2011, Inspector in Charge Adam Behnen submitted a Notification of Employee Incident to the USPS-OIG regarding Plaintiff's activities including filing false or misleading police reports, a false or misleading application for a temporary restraining order and mishandling evidence.  Defendant denies the remaining allegations in this paragraph.

36.     Defendant admits only that on or about October 13, 2011, Plaintiff was approved to return to work and that, on that same date, USPS placed Plaintiff on paid Administrative Leave pending investigation of misconduct allegations by the USPS-OIG.  Defendant denies the remaining allegations in this paragraph.

37.     Defendant admits only that Plaintiff received EAP information from Galetti.  Defendant lacks sufficient information to admit or deny the remaining allegations in this paragraph and so denies them.

38.     Defendant admits only that Plaintiff requested a copy of his yearly performance evaluation.  Defendant avers that "Pay for Performance," is a Postal Service program in which Postal Inspectors do not participate but believes that Plaintiff is referring to his yearly performance evaluation, completed in the Inspection Service Performance Evaluation System (ISPES).  Defendant denies the remaining allegations in this paragraph.

---

FIRST AMENDED ANSWER TO COMPLAINT

39.   Defendant admits only that Plaintiff was interviewed by USPS-OIG agents regarding allegations of Plaintiff's misconduct, including false and misleading statements in police reports that he filed and in his ex parte application for a temporary restraining order.   Defendant denies the remaining allegations in this paragraph.

40.   Defendant admits only that Plaintiff met with Dr. Jana Price-Sharps in December 2011.

41.   Defendant admits only that Plaintiff's security clearance had come due for an update and that a contract investigator was assigned. Defendant avers that the "USPS Office of Security" does not exist and that Five-Year Security Updates are handled by the U.S. Postal Inspection Service Security Investigative Service Center.  Defendant denies the remaining allegations in this paragraph.

42.   Deny.

43.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

44.   Defendant admits only that Plaintiff was re-interviewed by USPS-OIG agents on or about April 18, 2012, and that it is the practice of USPS-OIG to record interviews.  Defendant denies the remaining allegations in this paragraph.

45.   Defendant admits that Plaintiff was re-interviewed by USPS-OIG agents on or about April 18, 2012, and that during that interview is the first time Defendant is currently aware of that Plaintiff referenced an incident in southern CA that received national media attention in which an on-duty Immigration and Customs Enforcement (ICE) agent shot his supervisor.  Defendant avers that Plaintiff also referenced this shooting on later occasions.

46.   Defendant admits only that Plaintiff was re-interviewed by USPS-OIG agents on or about April 18, 2012, and that during that interview is the first time Defendant is currently aware of that Plaintiff referenced an incident in southern CA that received national media attention in which an on-duty Immigration and Customs Enforcement (ICE) agent shot his supervisor.  Defendant denies the remaining allegations in this paragraph.

47.   Defendant admits that Galetti completed a July 2012 request for a Fitness for Duty Examination of Plaintiff and that the request identified three occasions on which Plaintiff referenced an

incident in southern CA that received national media attention in which an on-duty ICE agent shot his supervisor.

48.     Defendant admits only that on or about June 5, 2012, Assistant Inspector in Charge Anthony Galetti and Acting Assistant Inspector in Charge Melisa Llosa met with Plaintiff to conduct a pre-disciplinary interview.  Defendant avers that Galetti provided a copy of an OIG report for Plaintiff to review but that Plaintiff was not allowed to take a copy away with him.  Defendant denies the remaining allegations in this paragraph.

49.     Deny.

50.     Defendant admits that Plaintiff attended a September 6, 2012 physical, medical examination and that, on that date, 142 days had elapsed since the first (of which Defendant is currently aware) of Plaintiff's references to an incident in southern CA in which an on-duty ICE agent shot his supervisor.  Defendant avers that Inspection Service Medical Director Dr. Bruce Dixon ordered a Fitness for Duty Examination for Plaintiff and admits that Dr. Dixon sent a letter dated August 30, 2012.  Defendant denies the remaining allegations in this paragraph.

51.     Deny.

52.     Deny.

53.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

54.     Deny.

55.     Deny.

56.     Deny.

57.     Defendant admits only that Plaintiff was provided instructions on attending the scheduled Fitness for Duty Examination.  Defendant denies the remaining allegations in this paragraph.

58.     Defendant admits only that Plaintiff was directed to attend two psychological examinations in the Washington, DC area on October 17 and 18, 2012.  Defendant denies the remaining allegations in this paragraph.

59.     Defendant admits only that Plaintiff was instructed on or about December 12, 2012, via phone to meet with Galetti and Garcia at the USPIS office on or about December 14, 2012, at 9:30 a.m.

60.     Defendant admits only that Plaintiff met with Assistant Inspector in Charge Galetti and Acting Team Leader Francisco Garcia on December 14, 2012.  Defendant denies the remaining allegations in this paragraph.

61.     Defendant admits only that Plaintiff attended a mediation with Assistant Inspector in Charge Anthony Galetti, Inspector Attorneys James Rickher and Terrance McKeown, and others on February 20, 2013.  Defendant denies the remaining allegations in this paragraph.

62.     Assuming that the incident to which this paragraph refers is the brief stop at Plaintiff's residence by Gadsden and Hiland on September 4, 2011, Defendant admits only that Plaintiff filed police reports and an ex parte application for a temporary restraining order.  Defendant denies the remaining allegations in this paragraph.

63.     Deny.

64.     Deny.

65.     Defendant admits only that Plaintiff was placed on paid Administrative Leave on October 13, 2011, pending an investigation by the USPS –OIG, and remained on Administrative Leave until his removal on from the U.S. Postal Inspection Service on March 15, 2013 for misconduct.  Defendant denies the remaining allegations in this paragraph.

66.     Deny.

67.     Defendant admits only that Plaintiff was placed on paid Administrative Leave on October 13, 2011, pending an investigation by the USPS –OIG, and remained on Administrative Leave until his removal on from the U.S. Postal Inspection Service on March 15, 2013 for misconduct.  Defendant denies the remaining allegations in this paragraph.

68.     Deny.

69.     Deny.

70.     Admit.

71.     Deny.

72.     Deny.

73.     Deny.

74.     Admit.

FIRST AMENDED ANSWER TO COMPLAINT

1    75.    Deny.

2    76.    Deny.

3    77.    Defendant admits only that Plaintiff filed police reports, an ex parte application for a

4    temporary restraining order, and later EEO complaints.  Defendant denies the remaining allegations in

5    this paragraph.

6    78.    Assuming that the incident to which this paragraph refers is the brief stop at Plaintiff's

7    residence by Gadsden and Hiland on September 4, 2011, Defendant admits only that Plaintiff filed

8    police reports and an ex parte application for a temporary restraining order.  Defendant denies the

9    remaining allegations in this paragraph.

10    79.    Defendant admits only that Plaintiff, while on paid Administrative Leave, called in to

11    Assistant Inspector in Charge Galetti, Monday through Friday, as required.  Defendant denies the

12    remaining allegations in this paragraph.

13    80.    Admit.

14    81.    Admit.

15    82.    Deny.

16    83.    Defendant admits only that Plaintiff filed a formal EEO complaint that appears to have

17    been signed by him on November 29, 2011.  Plaintiff's characterization of activity as "protected

18    activity" is a legal conclusion requiring no response.  Defendant denies the remaining allegations in this

19    paragraph.

20    84.    Defendant admits only that Behnen and Galetti provided affidavits as part of the EEO

21    investigation into Plaintiff's discrimination claims.  Defendant denies the remaining allegations in this

22    paragraph.

23    85.    Deny.

24    86.    Deny.

25    87.    Defendant admits only that Plaintiff was placed on paid Administrative Leave on October

26    13, 2011, pending an investigation by the USPS –OIG, and remained on Administrative Leave until his

27    removal on from the U.S. Postal Inspection Service on March 15, 2013 for misconduct, which included

28

FIRST AMENDED ANSWER TO COMPLAINT

lack of candor in connection with filing a complaint with the police.  Defendant denies the remaining allegations in this paragraph.

88.     Deny.

89.     Defendant admits only that Assistant Inspector in Charge Anthony Galetti reviewed and considered the *Douglas* factors when considering the appropriate level of corrective action.  Defendant denies the remaining allegations in this paragraph.

90.     Defendant admits only that Galetti testified that he did not consider Plaintiff's misconduct to be for gain, that he did not believe Plaintiff's misconduct was necessarily malicious, that Plaintiff omitted material facts in his application for a temporary restraining order, and that Plaintiff had no prior discipline.  Defendant denies the remaining allegations in this paragraph.

91.     Admit.

92.     Defendant admits only that Galetti testified that Galetti considered Plaintiff's past work record, his length of service, his performance appraisals, and his dependability a plus, and that Galetti considered Plaintiff's ability to get along with fellow workers and his supervisor's confidence in Plaintiff's ability to perform the assigned duties neutral.  Defendant denies the remaining allegations in this paragraph.

93.     Deny.

94.     Deny.

95.     Admit.

96.     Defendant admits only that the Postal Service (NEEOISO) received on or about February 10, 2012, an acknowledgment that an appeal from Plaintiff had been received.

97.     Defendant admits only that the Inspection Service was directed by the Office of Federal Operations to conduct an investigation into Plaintiff's claims.  Defendant denies the remaining allegations in this paragraph.

98.     Defendant admits only that the EEO Investigative file was sent to Plaintiff on or about January 5, 2013.

99.     Deny.

100.     Admit.

FIRST AMENDED ANSWER TO COMPLAINT

1   101.   Admit.

2   102.   Defendant admits only that Judge Kruse issued her decision on April 11, 2017.

3   103.   Deny.

4   104.   Admit.

**FIRST CLAIM RETALIATION**
**TITLE VII**

6   105.   Defendant admits only that Plaintiff filed a formal EEO complaint that appears to have

7   been signed by him on November 29, 2011.  Plaintiff's characterization of activity as "protected

8   activity" is a legal conclusion requiring no response.  Defendant denies the remaining allegations in this

9   paragraph.

10   106.   This paragraph contains legal conclusions requiring no response.  To the extent any

11   response is deemed required, Defendant admits only that Plaintiff was placed on paid Administrative

12   Leave on October 13, 2011, pending an investigation by the USPS –OIG, and remained on

13   Administrative Leave until his removal on from the U.S. Postal Inspection Service on March 15, 2013

14   for misconduct.  Defendant denies the remaining allegations in this paragraph.

15   107.   Defendant admits only that Plaintiff provided medical documentation requested by the

16   agency on or about September 29, 2011, and that he was notified on October 13, 2011 that the medical

17   documentation was sufficient.  Defendant avers that Plaintiff was placed on paid Administrative Leave

18   on October 13, 2011, pending an investigation by the USPS –OIG, and remained on Administrative

19   Leave until his removal on from the U.S. Postal Inspection Service on March 15, 2013 for misconduct.

20   Defendant denies the remaining allegations in this paragraph.

21   108.   Deny.

22   109.   Defendant admits only that Behnen and Galetti submitted EEO affidavits as part of the

23   EEO investigation into Plaintiff's EEO complaint.  Defendant denies the remaining allegations in this

24   paragraph.

25   110.   Defendant admits only that Plaintiff provided medical documentation requested by the

26   agency on or about September 29, 2011, and that he was notified on October 13, 2011 that the medical

27   documentation was sufficient.  Defendant avers that Plaintiff was placed on paid Administrative Leave

28   on October 13, 2011, pending an investigation by the USPS –OIG, and remained on Administrative

1    Leave until his removal on from the U.S. Postal Inspection Service on March 15, 2013 for misconduct.

2    Defendant denies the remaining allegations in this paragraph.

3         111.    Defendant admits only that on or about October 7, 2011, Inspector in Charge Adam

4    Behnen submitted a Notification of Employee Incident to the USPS-OIG regarding Plaintiff's activities

5    including filing false or misleading police reports, a false or misleading application for a temporary

6    restraining order and mishandling evidence.  Defendant denies the remaining allegations in this

7    paragraph.

8         112.    Deny.

9         113.    Deny.

10        114.    Deny.

11        115.    Deny.

12        116.    Deny.

13                     **SECOND CLAIM DISABILITY DISCRIMINATION**
                          **(Americans withDisabilities Act)**
14                     **(42 U.S.C. § 12112(a); 42 U.S.C. § 12102(1))**

15        117.    Dismissed (Dkt. 7).

16        118.    Dismissed (Dkt. 7).

17        119.    Dismissed (Dkt. 7).

18        120.    Dismissed (Dkt. 7).

19        121.    Dismissed (Dkt. 7).

20        122.    Dismissed (Dkt. 7).

21        123.    Dismissed (Dkt. 7).

22        124.    Dismissed (Dkt. 7).

23        125.    Dismissed (Dkt. 7).

24        126.    Dismissed (Dkt. 7).

25        127.    Dismissed (Dkt. 7).

26        128.    Dismissed (Dkt. 7).

27        129.    Dismissed (Dkt. 7).

28        130.    Dismissed (Dkt. 7).

FIRST AMENDED ANSWER TO COMPLAINT

131.   Dismissed (Dkt. 7).

132.   Dismissed (Dkt. 7).

133.   Dismissed (Dkt. 7).

134.   Dismissed (Dkt. 7).

135.   Dismissed (Dkt. 7).

## THIRD CLAIM VIOLATION OF THE REHABILITATION ACT
### (29 U.S.C. § 701 et. seq.)

136.   This paragraph characterizes Plaintiff's claim and so requires no response.

137.   This paragraph incorporates Plaintiff's prior allegations, the responses to which are hereby incorporated.

138.   This paragraph contains legal conclusions requiring no response.

139.   Deny.

140.   This paragraph contains legal conclusions requiring no response.

141.   This paragraph contains legal conclusions requiring no response.

142.   This paragraph contains legal conclusions requiring no response.

143.   This paragraph contains legal conclusions requiring no response.  To the extent any response is deemed required, Defendant denies the allegations in this paragraph.

144.   Deny.

145.   Deny.

146.   Deny.

147.   Deny.

The remainder of Plaintiff's complaint consists of his Prayer for Relief, which requires no response.  To the extent any response is deemed required, Defendant denies that Plaintiff is entitled to the relief requested or to any relief whatsoever.

Defendant denies each and every allegation not previously admitted or otherwise qualified.

//

//

//

FIRST AMENDED ANSWER TO COMPLAINT

**AFFIRMATIVE DEFENSES**

1.      Plaintiff's Complaint fails to state a claim upon which relief may be granted.

2.      The court lacks subject matter jurisdiction over some or all of Plaintiff's claims.

3.      Plaintiff's claims may not proceed to the extent Plaintiff failed to timely, fully and/or sufficiently exhaust available administrative remedies.

4.      Plaintiff is barred from bringing any claim for which he did not timely comply with applicable regulations and statutes of limitations and/or timely exhaust administrative remedies.

5.      The Postmaster General and her agents exercised reasonable care to prevent and correct promptly any allegedly discriminatory, harassing, or improper conduct.

6.      The Postmaster General and her agents had legitimate, non-discriminatory, non-retaliatory reasons that were not pretextual for taking the actions related to the subject of Plaintiff's complaint.

7.      Plaintiff has failed to establish a prima facie case of discrimination or retaliation of any kind.

8.      Although the Postmaster General denies that any action was taken against Plaintiff for any illegal motive, for every action that Plaintiff complains was taken pursuant to an illegal motive, the Postmaster General and her agents would have taken the same actions regardless of any alleged illegal motive based on legitimate, non-discriminatory, non-retaliatory reasons.

9.      Although the Postmaster General denies any illegal or improper acts, for every act of which Plaintiff complains, the Defendant's action was excused, privileged, and/or consented to by Plaintiff.

10.     If Plaintiff sustained any damage or loss, which the Postmaster General denies, the damage or loss was not caused by any improper or illegal act by the Postmaster General or her agents.

11.     The Postmaster General denies that she or her agents engaged in any conduct that proximately caused the injury, damage, and loss allegedly incurred by Plaintiff.

12.     To the extent Plaintiff failed to mitigate his damages, any damages to which he may be entitled must be reduced in proportion thereto.

13.     If Plaintiff sustained any damage or loss, which the Postmaster General denies, recovery is limited by statute, including 42 U.S.C. § 1981a(b)(3), and he cannot recover more than allowable by law.

14.     If Plaintiff sustained any damage or loss, which the Postmaster General denies, he cannot recover punitive damages under Title VII or the Rehabilitation Act.  42 U.S.C. § 1981a(b)(1).

15.     If Plaintiff sustained any damage or loss, which the Postmaster General denies, the damage or loss was caused or contributed to by Plaintiff's own acts or omissions.

16.     If Plaintiff sustained any damage or loss, which the Postmaster General at all times denies, the same was caused or contributed to by the acts or omissions of persons or parties other than Defendant and over whom Defendant had no control or right of control.

17.     If Plaintiff sustained any damage or loss, which the Postmaster General denies, the damage or loss must be offset against and reduced by all amounts earned by Plaintiff in mitigation of his loss.

18.     If any recovery or other award is made against the Postmaster General, income taxes must be deducted from all alleged lost earnings, if any.

19.     Plaintiff's recovery, if any, must be reduced by any benefits compensating the same loss.

20.     Plaintiff's recovery, if any, must be offset by those benefits which plaintiff has received or will receive in the future from the United States, or from any state or local agency that receives funds from the United States, such as Social Security, Medicare, MediCal, and TriCare benefits.

21.     If any recovery or other award is made against the Postmaster General, Plaintiff is only entitled to such interest as is allowable by law.

22.     Plaintiff's future damages, if any, must be reduced to present value.

23.     Plaintiff is not entitled to a jury trial on any claim for equitable relief.

24.     Some or all of actions complained of in the Complaint were not adverse actions subject to redress under Title VII or the Rehabilitation Act.

25.     The Postmaster General and her agents at all times acted in good faith.

26.     The Postmaster General asserts that each of Plaintiff's claims is barred because the Postmaster General has discovered facts, and may later discover additional facts, that if known prior to the decision to terminate Plaintiff's employment would have created additional grounds for the decision to terminate Plaintiff's employment and as a result the after-acquired evidence doctrine bars Plaintiff's recovery for such claims and/or cuts off damages for such claims.

27.     The Postmaster General asserts that by virtue of Plaintiff's actions and conduct, Plaintiff has unclean hands and is thereby barred from any relief in this action.

28.     The Postmaster General reserves the right to amend her answer with additional defenses of which she may become aware as discovery progresses and to raise any other matter constituting an avoidance or affirmative defense.

WHEREFORE, Defendant prays that:

1.     Plaintiff take nothing by way of his complaint;

2.     This Court dismiss the complaint with prejudice;

3.     Judgment be awarded in favor of the Postmaster General, together with costs; and

4.     The Court award such other relief as it finds just and proper.

Respectfully submitted,

McGREGOR W. SCOTT
United States Attorney

Dated:                  By: */s/*
VICTORIA L. BOESCH
Assistant United States Attorney

Attorneys for the Postmaster General

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED ANSWER TO COMPLAINT