1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| THEODORE W. MORT, | ) | Case No.: 1:19-cv-0652 JLT SKO |
| Plaintiff, | )<br>) | AMENDED PRETRIAL ORDER |
| v. | )<br>) | Deadlines: |
| LOUIS DEJOY, Postmaster General United<br>States Postal Service, | )<br>)<br>) | Motions in Limine Filing:  7/6/2022<br>Oppositions to Motions in Limine:  7/21/2022 |
| Defendant. | )<br>) | Hearing on Motions in Limine:  8/4/2022<br>Trial Submissions:  8/1/2022 |
| | )<br>) | Jury trial: 8/15/2022 at 8:30 a.m., 7-10 days estimate |

The Court has considered the objections of the defendant (Doc. 98). They are **GRANTED in PART**. The Court amends the pretrial order to reflect this.[1]

Theodore Mort is a former postal inspector with the United States Postal Inspection Service, and asserts he suffered violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Rehabilitation Act.

On June 3, 2022, the Court conducted a final pretrial conference.  Dow Patten appeared as counsel for Plaintiff.  Philip Scarborough and Victoria Boesch appeared as counsel for Defendant. Having considered the parties' objections, the court issues this tentative pretrial order.

**A.     JURISDICTION/ VENUE**

---

[1] This does not constitute any indication as to how the Court will rule on the plaintiff's motion in limine regarding precluding or limiting the testimony of experts (Doc. 111).

1

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  In addition, the events that gave rise to this action occurred in Fresno, California.  Accordingly, venue is proper in the United States District Court for the Eastern District of California.  *See* 28 U.S.C. § 1391.

**B.    JURY TRIAL**

Plaintiff demanded a jury trial in this matter.  (Doc. 1 at 22.)  The jury trial will consist of eight jurors.

**C.    UNDISPUTED FACTS**

Plaintiff Mort worked as a Postal Inspector in Fresno, CA. As a Postal Inspector, Mort performed law enforcement duties investigating crimes involving mail. On September 4, 2011, USPIS Team Leader Mack Gadsden (Mort's direct USPIS supervisor) and Postal Inspector Jennifer Hiland stopped at Mort's house early in the morning on a Sunday on their way to the Fresno Police Department to gather information regarding a mail-related crime. Gadsden knocked on Mort's front door. No one answered the door. Gadsden went through a side gate then around to the back of the house and knocked on the back door. There was no response to this knocking. Gadsden and Hiland then proceeded to the Fresno Police Department. The two later returned to Mort's house and Gadsden again knocked on the door. No one answered the door.  Gadsden was carrying his USPIS-issued service weapon and his law enforcement credentials during these events on September 4, 2011.

On Tuesday September 6, 2011, Mort and Gadsden met in Stockton in a USPIS office. Following this meeting, Mort took several days of sick leave from work. In mid-September 2011, USPIS placed Mort on administrative leave pending medical documentation regarding his ability to return to work. Mort filed police and OIG reports and a Congressional complaint complaining that Gadsden trespassed on his property on September 4, 2011, and damaged one of Mort's windows. Mort also sought and obtained an ex parte restraining order against Gadsden based on this asserted trespass and property damage.

In mid-October 2011, USPIS placed Mort on administrative leave pending an investigation by the USPIS Office of the Inspector General (USPIS OIG) into allegations of Mort's misconduct. In November 2011, USPIS OIG agents interviewed Mort as part of this investigation. USPIS OIG agents again interviewed Mort in April 2012. During that interview, Mort referred to a shooting that had

2

recently occurred in Los Angeles Immigration and Customs Enforcement (ICE) in which an ICE agent shot his supervisor.

In July 2012, Anthony Galetti submitted a July 2012 request for a Fitness-for-Duty examination of Mort. In early September 2012, a doctor did a medical examination of Mort. In mid-October 2012, Mort underwent two psychological examinations. In mid-December 2012, Mort met with Galetti. Then, in late February 2013, Mort met with Galetti and others for a mediation.

In mid-March 2013, USPIS Inspector in Charge Oscar Villanueva terminated Mort's employment.

## D.  DISPUTED FACTS

The parties disagree regarding certain aspects of what happened on September 4, 2011. They disagree regarding the reasons for, propriety of, and circumstances surrounding Gadsden's conduct and what constituted appropriate responses by Mort and by USPIS to that conduct. They disagree regarding various aspects of Mort's interactions with Gadsden. They disagree regarding the reasons USPIS placed Mort on administrative leave and the circumstances surrounding and significance of various events and communications that occurred during that leave. They also disagree regarding the reasons for, circumstances surrounding, and significance of Mort's Fitness-for-Duty examinations. And they disagree regarding various aspects of Mort's conduct, appropriate responses to that conduct, the reasons why USPIS terminated Mort's employment, and whether that termination was justified.

The parties also dispute: whether Mort was involuntarily suspended from his job duties in 2011 as a result of protected activity under Title VII; whether Gadsden's entry into Mort's back yard was justified; whether Mort's backyard was secured; whether Assistant Inspector in Charge Anthony Galetti properly took custody of Mort's assigned agency equipment on September 16, 2011; the propriety of Mort being placed on involuntary administrative leave in October 2011; the import of and appropriate response to Mort's references to a shooting that had recently occurred in Los Angeles in which an ICE agent shot his supervisor; and the details surrounding the July 2012 Fitness-for-Duty examination.

## E.  DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE

Both parties intend to file motions in limine regarding the evidence to be used at trial. The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be

offered at trial.  "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *Jonasson v. Lutheran Child and Family Services*, 115 F. 3d 436, 440 (7th Cir. 1997).  The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  *Id*. The court does not encourage the filing of motions in limine unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial.

**In advance of filing any motion in limine, counsel SHALL meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine.  Along with their motions in limine, the parties SHALL file a certification demonstrating counsel have in good faith met and conferred and attempted to resolve the dispute.  Failure to provide the certification may result in the Court refusing to entertain the motion.**

Any motions in limine must be filed with the Court no later than **July 6, 2022**.  The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.  Any opposition to the motion must be served on the other party, and filed with the Court no later than **July 21, 2022,** with any replies due no later than **July 28, 2022**.  Upon receipt of any opposition briefs, the court will notify the parties if it will hear argument on any motions in limine prior to the first day of trial.  A hearing on the motions in limine is set for **August 4, 2022**.

The parties are reminded they may still object to the introduction of evidence during trial.

**Plaintiff:**

Plaintiff does not anticipate evidentiary issues other than ordinary motions in limine regarding information not produced in discovery.

**Defendant:**

1.      To the extent that Plaintiff offers testimony based on inadmissible hearsay, such testimony should be excluded.

2.      The Postmaster General will object to the appearance of witnesses who have no testimony to offer pertinent to the issues in the case and to the questioning of witnesses regarding

4

irrelevant matters.

        3.      Plaintiff cannot offer at trial evidence that he did not disclose in discovery.

        4.      Plaintiff should not be permitted to introduce evidence of damages for which he has not provided computations as required by Fed. R. Civ. P. 26(a)(1)(A)(iii).

        5.      Plaintiff cannot offer any expert testimony at trial because Plaintiff disclosed no experts.

        6.      Plaintiff should be prohibited from offering testimony for which the witness lacks the requisite personal knowledge to render that testimony admissible.  Fed. R. Evid. 602.

        7.      Plaintiff should be prohibited from offering evidence concerning alleged acts by USPIS that are not adverse employment actions.

**F.     SPECIAL FACTUAL INFORMATION**

        None.

**G.     RELIEF SOUGHT**

        <u>**Plaintiff**</u>

        Plaintiff seeks monetary damages for lost wages, benefits, and other damages.  He asserts the amounts were disclosed in a "detailed demand for settlement."  (Doc 90 at 5.)  Plaintiff has also prayed for injunctive relief as well, in the form of return to work.

        <u>**Defendant**</u>

        Defendant contends: "Plaintiff has failed to meet his obligation to identify the specific amounts he intends to seek at trial for each category of monetary damages.  Though Fed. R. Civ. P. 26(a)(1)(A)(iii) required Plaintiff to provide "a computation of each category of damages claimed" in his initial disclosures at the beginning of discovery, he has nonetheless failed to do so throughout discovery in his disclosures and discovery responses."  (Doc 90 at 5.)  Thus, Defendant asserts that "Plaintiff is barred from offering any amounts not disclosed, or any computation not disclosed, at trial or after trial."  (*Id.*, citing Fed. R. Civ. P. 37(c).)

**H.     <u>POINTS OF LAW</u>**

        ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT BECOMES

FINAL ARE DISMISSED AND DEEMED WAIVED.

**Plaintiff**

1.    Plaintiff's Title VII and EEO claims have been fully exhausted through a full EEOC process.

2.    A nexus exists between discriminatory statements made by Plaintiff's superiors and co-workers and the adverse actions. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004).

3.    "Similarly-situated" comparators need not engage in the exact same conduct, but only conduct of similar gravamen. *Vasquez*, 349 F.3d at 641.

4.    "Not me" evidence is not a defense.  "Defendant's similar treatment of a person outside of the protected class, or favorable treatment of others within the protected class, is not a defense. *Strickland v. United Parcel Service*, 555 F.3d 1224, 1230 (10th Cir. 2009); *Pitre v. Western Electric Co.*, 843 F.2d 1262, 1272 (10th Cir. 1988). This is because discrimination against one employee cannot be remedied by nondiscrimination against another employee in that same group. *See Brown v. Henderson*, 257 F.3d 246, 252 (2nd Cir. 2001). This is particularly true when the favorable treatment of members of the same class, or unfavorable treatment of members outside of the class occur subsequent to the plaintiff's termination. *Chuang v. Univ. of California Davis*, 225 F.3d 1115 (9th Cir. 2000); *Gonzalez v. Police Dept. of San Jose*, 901 F.2d 758 (9th Cir. 1990); *Burger v. Litton Industries*, 1996 WL 421449 (S.D.N.Y. 1996)." *Connecticut v. Teal*, 457 US 440.

**Defendant**

All claims brought in this case are subject to federal law.

1.    To bring a Title VII or Rehabilitation Act claim in federal district court, plaintiff was required to exhaust administrative remedies, including the requirement that he contact an EEO counselor within 45 days of a claimed adverse action.  42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.105(a)(1), 1614.106; *Sommatino v. United States*, 255 F.3d 704, 707-10 (9th Cir. 2001); *Cherosky v. Henderson*, 330 F.3d 1243, 1245-46 (9th Cir. 2003); *Leong v. P*otter, 347 F.3d 1117, 1121-22 (9th Cir. 2003).

2.    "'The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation.'"  *Sommatino*, 255 F.3d at 707-08 (quoting

*Paige v. California*, 102 F.3d 1035, 1041 (9th Cir. 1996)).  Similarly, substantial compliance with the exhaustion requirement is a jurisdictional prerequisite for claim under the Rehabilitation Act.  *See Leong*, 347 F.3d at 1121-22.  Accordingly, a plaintiff cannot pursue a Title VII or Rehabilitation Act claim when the administrative charge brought and investigated does not describe the legal theory with sufficient clarity to notify the agency of the claim, even if the plaintiff did administratively exhaust other claims.  *See, e.g., Ong v. Cleland*, 642 F.2d 316, 317-20 (9th Cir. 1981); *id.* at 320 ("The failure to raise an issue administratively subverts the procedures and policies of Title VII and justifies precluding its presentation in federal court.").

3.      A Rehabilitation Act regarded-as disability discrimination claim requires Mort to prove that: (1) USPIS regarded him as having a physical or mental impairment, (2) Mort was a qualified individual, and (3) Mort was terminated and sent for a Fitness for Duty examination because USPIS regarded him as having a physical or mental impairment.  *See Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007), *superseded by statute on other grounds as stated in*, *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 434 (9th Cir. 2018); *Nunies*, 908 F.3d at 434; Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 12.1C (Regarded As Disability—Elements).

4.      The Rehabilitation Act incorporates the Americans with Disabilities Act (the ADA)'s standards of substantive liability.  *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007), *superseded by statute on other grounds as stated in*, *Nunies*, 908 F.3d at 4345.

5.      To meet his burden of proving that he was a qualified individual at the time of the alleged discrimination, Mort must prove that he had the requisite skill, experience, and education and met the other job-related requirements of the position of United States Postal Inspector.  *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1128 (9th Cir. 2020).

6.      If remarks are offered as evidence of discriminatory intent, they must either be those made by the decision-maker himself or plaintiff must show a sufficient nexus between the remarks and the decision-maker's subsequent action.  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004).  There is not a sufficient nexus between the employee who made a discriminatory statement and the decision-maker's action unless the employee in question is substantially involved in the employment action.  *DeHorney v. Bank of America Nat'l Trust & Sav. Ass'n*, 879 F.2d 459, 468

(9th Cir. 1989).

7.      The employer need not prove a non-discriminatory intent, and courts "only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.* 281 F.3d 1054, 1063 (9th Cir. 2002) (internal quotations and citations omitted).

8.      An employee's feelings or subjective beliefs do not qualify as specific and substantial evidence of pretext. *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986).

9.      To demonstrate that the plaintiff was treated differently than similarly situated individuals, the plaintiff must be similarly situated to those individuals in all material respects. *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).  Employees who have different job responsibilities and duties or who have different supervisors are not similarly situated.  *Vasquez*, 349 F.3d 634, 641-42 & n.17.

10.     Employees must be similarly situated in "all material respects" to be comparable, not only in their job duties and responsibilities, but also in their conduct.  *Vasquez*, 349 F.3d at 641; *Leong*, 347 F.3d at 1124.

11.     If similarly situated employees outside his protected class were treated in the same manner as Plaintiff, his claim fails.  *Gerdom v. Cont'l Airlines, Inc.*, 692 F.2d 602, 609 (9th Cir. 1982) (en banc); *Snead v. Metro. Prop. & Cas. Inc. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001).

12.     Though the Supreme Court has yet to rule on the question, courts assume that Title VII of the Civil Rights Act prohibits federal employers from retaliating against an employee for engaging in protected activity, such as opposing, complaining of, or seeking remedies for unlawful workplace discrimination.  *See* 42 U.S.C. § 2000e-3(a); *White v. General Services Admin.*, 652 F.2d 913, 916-17 (9th Cir. 1981); *see also Green v. Brennan*, 136 S. Ct. 1769, 1774 n.1 (2016); *Gomez-Perez v. Potter*, 553 U.S. 474, 488 n.4 (2008).

13.     To prevail on his Title VII retaliation claim, Mort has the burden of proving that: (1) he engaged in a protected activity under Title VII; (2) USPIS subjected him to an adverse employment action; and (3) he was subjected to the adverse employment action because of his protected activity. *Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 422 (9th Cir. 2013); *Villiarimo*, 281

F.3d at 1064; Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 10.8 (Civil Rights—Title VII—Retaliation—Elements and Burden of Proof).

14.    An employee is not protected by Title VII when he violates legitimate employer rules, knowingly disobeys orders, disrupts the work environment, willfully interferes with the attainment of his employer's goals, or renders himself unable to fulfill the functions of his employment. *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir. 1985); *Smith v. Singer Co.*, 650 F.2d 214, 217 (9th Cir. 1981).

15.    To establish a causal nexus between the alleged adverse action and the plaintiff's protected activity, the plaintiff must show that the decision maker who took the allegedly retaliatory action was aware of the plaintiff's protected activity. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

16.    To rely on temporal proximity to establish causation for a retaliation claim, the adverse employment action "must be 'very close'" to and "follow[] on the heels of" the protected activity. *Clark County School District v. Breeden*, 532 U.S. 268 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citing cases holding that three- and four-month delays were too long)); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064-65 (9th Cir. 2002); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006) (eight-month gap too long); *Manatt v. Bank of America*, 339 F.3d 792, 802 (9th Cir. 2003) (nine months too long).

17.    An adverse employment action in a disparate treatment context is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "A tangible employment action in most cases inflicts direct economic harm. As a general proposition, only a supervisor, or other person acting with the authority of the company, can cause this sort of injury." *Id.*

18.    An adverse action in the retaliation context is one that a reasonable employee would have found materially adverse, meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern v. White*, 548 U.S. 53 (2006) (internal quotations and citations omitted).

19.     Personal animosity is not the equivalent of discrimination and is not proscribed by Title VII.  *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986).

20.     The after-acquired evidence doctrine precludes "an employee from receiving remedies for wrongful discharge if the employer later discovers evidence of wrongdoing that would have led to the employee's termination had the employer known of the misconduct."  *Belling v. DDP Holdings, Inc.*, 2013 WL 12140986, at *4 (C.D. Cal. May 30, 2013).

21.     If an employer shows by a preponderance of the evidence that it would have fired the plaintiff for misconduct that it later discovered, the plaintiff is not entitled to back pay and other remedies after the day that the employer discovered the misconduct.  *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 761, 764 (9th Cir. 1996).  In addition, any back pay remedy in such cases must account for any further circumstances that affect the legitimate interests of the parties.  *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995).

22.     Under the doctrine of unclean hands, a party may be denied recovery where the party engaged in "reprehensible conduct in the course of the transaction at issue."  *McKennon*, 513 U.S. at 360.

23.     The doctrine of unclean hands limits the types of remedies that are available to a plaintiff in an employment discrimination case.  *See McKennon*, 513 U.S. at 361-62.  Remedies such as front pay and reinstatement are inappropriate when the doctrine applies.  *See id*.

24.     Neither Title VII nor the Rehabilitation Act provide for a right to have a jury determine the appropriate amount of back pay, which is an equitable remedy that must be awarded by the district court in its discretion.  *Lutz v. Glendale Union High School*, 403 F.3d 1061, 1069 (9th Cir. 2005).

25.     The total potential compensatory damages that Mort could recover in this case under Title VII and/or the Rehabilitation Act are limited to $300,000.  42 U.S.C. § 1981a(b)(3).  No punitive damages can be recovered from USPIS.  42 U.S.C. § 1981a(b)(1).  *See also Tuers v. Runyon*, 950 F. Supp. 284, 285-86 (E.D. Cal. 1996) (Postal Service immune from punitive damages under Title VII and the Rehabilitation Act).

26.     A party who fails to disclose damages calculations during discovery is prohibited from offering evidence on those components of damages during trial and from arguing for a specific dollar

amount at trial.  *See* Fed. R. Civ. P. 37(c); *Maharaj v. Cal. Bank & Trust*, 288 F.R.D. 458, 463-64 (E.D. Cal. 2013).

27.     To the extent front pay is awarded, it "is intended to be temporary in nature," *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987), and cannot be used as a windfall to the plaintiff.  *See Glenn-Davis v. City of Oakland*, 2008 WL 410239, at *4 (N.D. Cal. Feb. 12, 2008). Front pay periods must be relatively short to avoid making any calculations unduly speculative.  See *id.* at *3 (citing *Peyton v. DiMario*, 287 F.3d 1121, 1128 (D.C. Cir. 2002)).

28.     Any back pay or front pay awards must be offset by the amount of other benefits Mort received, such as unemployment or disability benefits.  *See, e.g., McLean v. Runyon*, 222 F.3d 1150, 1155 (9th Cir. 2000); *see Viveros v. Donahoe*, 2012 WL 6021667, at *9 (C.D. Cal. Nov. 30, 2012).

29.     Settlement communications are not admissible to prove the validity or amount of a disputed claim.  Fed. R. Evid. 408.

30.     Settlement communications provided after the close of discovery do not satisfy a party's obligation to provide damages calculations in their initial disclosures.  *See Torres v. Transguard Ins. Co. of Am., Inc.*, 2015 WL 12592724, at *5 (D. Ariz. July 1, 2015).

## I.   ABANDONED ISSUES

In mid-December 2020, the Postmaster General filed a motion to compel an independent medical examination of Mort by a psychiatrist.  (Docs. 33, 34.)  The parties resolved this motion by a stipulation through which the Postmaster General agreed not to seek a psychological independent medical examination at that time based on Mort's agreement (1) not to seek damages for any diagnosed mental health condition, (2) not to designate his treating psychologist, Jana Price-Sharps, as an expert witness under Federal Rule of Civil Procedure 26(a)(2), and (3) not to offer testimony from Ms. Price-Sharps at trial under Federal Rule of Evidence 702, 703, or 705.  (Docs. 37, 38.)

## J.   WITNESSES

1.     The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST

INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

**Plaintiff's Witnesses**

1.    Plaintiff, Theodore Mort

2.    Jennifer Hiland

3.    Anthony Galletti

4.    Mack Gadsden

5.    Arceli "Sally" Diaz

6.    Rafael Nuñez

7.    Keith D. Silva

8.    Adam Behnen

9.    Gordon Thompson

10.   Robert Musti

**Defendant's Witnesses**

1.    Oscar S. Villanueva, contact through counsel

2.    Anthony Galetti, contact through counsel

3.    Rafael Nunez, contact through counsel

4.    Jennifer Hiland, contact through counsel

5.    Mack Gadsden, contact through counsel

6.    Adam Behnen, contact through counsel

7.    Gordon Thompson, contact through counsel

8.    Martin G. Allen, M.D., contact through counsel

9.    Neil S. Hibler, Ph.D., contact through counsel

10.   TIGTA Special Agent Kelly Sopko

11.   TIGTA Special Agent Shane Gilmore

12.   United States Postal Inspection Service Records Custodian, contact through counsel

**2.      The court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria**:

12

      a.      The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

      b.      The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

3.      Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so the court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:

      a.      The witness could not reasonably have been discovered prior to the discovery cutoff;

      b.      The court and opposing parties were promptly notified upon discovery of the witness;

      c.      If time permitted, the party proffered the witness for deposition; and

      d.      If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

**K.      EXHIBITS, SCHEDULES AND SUMMARIES**

NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS ORDER, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

1.      **For a party to use an undisclosed exhibit for any purpose, they must meet the following criteria**:

      a.      The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

      b.      The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph 2, below.

2.      Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits so that the court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

      a.      The exhibits could not reasonably have been discovered earlier;

b.   The court and the opposing parties were promptly informed of their existence; and

c.   The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

**Plaintiff's Exhibits**

1.   09/1/11 Email Gadsden to Mort Subject FCD entry of complaints

2.   10/05/11 Memorandum of Interview – Jennifer Vincent

3.   10/03/11 Memorandum of Interview – Ted Mort

4.   09/08/11 Email Darlene Romero to San Francisco Division Subject: Weekly Bulletin 09-09-11

5.   09/15/11 Email Darlene Romero to San Francisco Division Subject: Weekly Bulletin 09-16-11

6.   10/17/11 Declaration of Anthony Galletti Case No. 11CECG03459, including attachments

7.   3/09/12 Memorandum to the Director In the case of Theodore Mort, File # 132257821, Author: Louis Toman

8.   08/31/12 Email Oscar Villanueva to San Francisco Division, Subject: Stockton Central Valley Team Acting TL Detail.

9.   11/14/11 OIG Memorandum of Interview Adam Behnen

10.   11/15/11 OIG Memorandum of Interview Jennifer Vincent

11.   11/15/11 OIG Memorandum of Interview Mack Gadsden

12.   11/15/11 OIG Memorandum of Interview Joshua Knapp

13.   11/16/11 OIG Memorandum of Interview Alyson Berg

14.   06/06/12 Memorandum to File, Author Anthony Galletti

15.   09/02/12 Email Sally Diaz to Ted Mort Subject: Re: fitness for duty exams

16.   04/18/12 OIGAdministrative Warning: Kalkines

17.   10/31/12 Fresno Police Department Summary Incident Report No. 12310502

18.   10/05/11 Memorandum of Interview Mack Gadsden

19.   10/05/11 Memorandum of Interview Jacob Gohlson

20.   01/26/12 OIG Memorandum of Interview Arceli S. Diaz

21.   09/23/11 FMLA Packet Case# 103000204258

22.   09/05/12 letter Devin Nunez to Plaintiff with attachment

23.   04/05/13 Slater Moffat letter to Plaintiff, Subject: Damages for Wrongful Termination with attachments

24.   08/15/03 Notice of Disapproved Claim # 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 HA

25.   09/12/11 Receipt San Joaquin Glass

26.   02/26/16 Email Keith Silva to Rho, Nunez, Rickher, McKeown subject FW: Baumgart Report, with attachments

27.   01/24/14 Letter Galletti to Office of Workers Compensation Programs

**Defendant's Exhibits**

1.   Mort Complaint to OIG Hotline, September 6, 2011

2.   Mort Email dated September 16, 2011, Subject "RE: Admin Leave"

3.   September 16, 2011 Behnen Letter to Mort re Placement on Administrative Leave

4.   September 22, 2011 Behnen Letter to Mort re medical documentation

5.   October 13, 2011 Behnen Letter to Mort re Placement on Administrative Leave

6.   September 16, 2011 Mort Memo of Interview of Behnen

7.   Request for Orders to Stop Harassment dated October 4, 2011

8.   Court Order Granting Temporary Restraining Order dated October 5, 2011

9.   Mort Police Report September 20, 2011

10.   Mort Communication to Congressman Devin Nunes

11.   Mort Police Report September 27, 2011

12.   April 14, 2012 Kalkines Warning signed by Mort

13.   October 8, 2012 Mort email re The Stupid in the USPS/USPIS

14.   October 10, 2012 Mort email re FW: The Stupid in the USPS/USPIS

15.   October 13, 2012 Price-Sharps Email re Fwd: The Stupid in the USPS/USPIS

16.    Postal Inspector Position Description

17.    Notification of Alleged Employee Misconduct dated October 7, 2011

18.    Behnen Notes re Ted Mort

19.    October 21, 2011 Nunez Investigative Memorandum and Exhibits re
       Investigation into alleged Gadsden misconduct

20.    September 27, 2012 Villanueva Letters to Mort re Fitness for Duty Examination

21.    Request for Fitness for Duty Examination July 6, 2012

22.    Galetti Email to Mort August 31, 2012 Fitness for Duty

23.    Galetti Email to Mort October 5, 2012 re FFD in Washington DC

24.    Galetti Notes re October 5, 2012 Conversation with Mort

25.    Mort October 5, 2012 email re FFD in Washington DC

26.    September 16, 2011 email re Admin Leave

27.    Gadsden Memo to File September 6, 2011

28.    Gadsden Memo to File re September 4, 2011

29.    September 4, 2011 Gadsden Email

30.    September 7, 2011 Vincent Memo re Fresno Duty Call 9/4/11

31.    September 27, 2011 OIG Referral of Gadsden Allegation

32.    September 29, 2011 Behnen Email to Nunez

33.    September 29, 2011 Nunez Email to Behnen

34.    October 5, 2012 Mort Email re Fitness for Duty Order

35.    Galetti Memo to File re June 5, 2012 meeting with Mort

36.    July 5, 2012 Inquiry re Mort Firearms

37.    November 28, 2012 Notice of Proposed Adverse Action – Removal

38.    March 14, 2013 Letter of Decision – Adverse Action Removal

39.    March 16, 2013 Price-Sharps Email to Galetti

40.    November 16, 2011 Memorandum re Interview of Theodore W. Mort

41.    November 16, 2011 Mort Acknowledgement of Rights

42.    April 18, 2012 Memorandum re Interview of Theodore W. Mort

43. Report of Martin G. Allen, M.D. re Theodore W. Mort

44. Dr. Martin G. Allen, M.D. CV

45. Report of Neil S. Hibler, Ph.D., ABPP re Psychological Fitness for Duty Examination of U.S. Postal Inspector Theodore W. Mort

46. Dr. Neil S. Hibler, Ph.D., ABPP CV

47. Fitness for Duty Examination Documents

48. Office of Inspector General United States Postal Service Report of Investigation – Theodore W. Mort, Case # 12UIHQ0005GC18IAD

49. Report of Investigation Theodore W. Mort, Agency Case No. 66-000-0001-12

50. Report of Investigation Theodore W. Mort, Agency Case No. 66-000-0011-13

51. Treasury Inspector General for Tax Administration Last Chance Settlement Agreement for Theodore Mort

52. Treasury Inspector General for Tax Administration Memorandum for Theodore W. Mort re Administrative Leave

53. Treasury Inspector General for Tax Administration Memorandum for Theodore W. Mort re Proposed Removal from Federal Service

54. Treasury Inspector General for Tax Administration Report of Investigation re Theodore W. Mort Case No. 54-0407-0001-1

55. Treasury Inspector General for Tax Administration Report of Investigation re Theodore W. Mort Case No. 54-0610-0015-1

56. Transcript of Proceedings before Administrative Judge Katherine J. Kruse, EEOC No. 480-2013-00261X, August 16, 2016

57. Transcript of Proceedings before Administrative Judge Katherine J. Kruse, EEOC No. 480-2013-00261X, August 17, 2016

58. Transcript of Proceedings before Administrative Judge Katherine J. Kruse, EEOC No. 480-2013-00261X, August 18, 2016

59. EEO Complaint file, Mort v. Brennan, Agency Case No. 66-000-0001-12

60. Deposition of Theodore Mort Volume 1, Transcript and Video

61.     Deposition of Theodore Mort Volume 2, Transcript and Video

62.     Deposition of Theodore Mort Volume 3, Transcript and Video

63.     Deposition of Mack Gadsden Transcript

64.     Deposition of Anthony Galetti Transcript

65.     Deposition of Francisco Garcia Transcript

66.     Deposition of Rafael Nunez Transcript

67.     Deposition of Gordon Thompson Transcript

68.     Deposition of Oscar Villanueva Transcript

On or before **July 11, 2022** counsel **SHALL** meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examine each other's exhibits.  Any exhibits not previously disclosed in discovery **SHALL** be provided via e-mail or overnight delivery so that it is received by **July 5, 2022**.

1.     At the exhibit conference, counsel will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiff's exhibits and one listing Defendant's exhibits.  In advance of the conference, counsel must have a complete set of their proposed exhibits in order to be able to fully discuss whether evidentiary objections exist.

2.     At the conference, counsel shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence.  These exhibits **SHALL** be marked as a joint exhibit and numbered as directed above.  Joint exhibits **SHALL** be admitted into without further foundation.

All joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g. JT/1, JT/2, etc.).  Plaintiff's exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g. PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g. DX501, DX502, etc.). The parties SHALL number each page of any exhibit exceeding one page in length (e.g. PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any document is offered that is not fully legible, the Court may exclude it from evidence.

Each joint exhibit binder shall contain an index which is placed in the binder before the

exhibits.  The index shall consist of a column for the exhibit number, one for a description of the exhibit and one column entitled "Admitted in Evidence" (as shown in the example below).

### INDEX OF JOINT EXHIBITS

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE |
|---|---|---|
| | | |

3.      As to any exhibit which is not a joint exhibit but to which there is no objection to its introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be indexed as such on the index of the offering party.   Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

4.      Each exhibit binder shall contain an index which is placed in the binder before the exhibits.   Each index shall consist of the exhibit number, the description of the exhibit and the three columns as shown in the example below.

### INDEX OF EXHIBITS

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OBJECTION OTHER |
|---|---|---|---|---|
| | | | | |

5.      On the index, as to exhibits to which the only objection is a lack of foundation, counsel will place a mark under the column heading entitled "Objection Foundation."

6.      On the index, as to exhibits to which there are objections to admissibility that are not based solely on a lack of foundation, counsel will place a mark under the column heading entitled "Other Objections."

7.      As to each exhibit which is not objected to in the index, it shall be marked and received into evidence and will require no further foundation.

After the exhibit conference, Plaintiff and counsel for the defendants **SHALL** develop four complete, legible sets of exhibits.  The parties **SHALL** deliver three sets of their exhibit binders to the Courtroom Clerk and provide one set to their opponent, no later than 4:00 p.m., on **August 11, 2022.**

Counsel **SHALL** determine which of them will also provide three sets of the joint exhibits to the Courtroom Clerk.

        8.      The Parties **SHALL** number each page of any exhibit exceeding one page in length.

## L.    POST-TRIAL EXHIBIT RETENTION

        Counsel who introduced exhibits at trial **SHALL** retrieve the original exhibits from the courtroom deputy following the verdict in the case. The parties' counsel **SHALL** retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted.

## M.    DISCOVERY DOCUMENTS

        The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial. NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

        **Plaintiff's Documents**

        Counsel for Plaintiff did not identify any discovery documents.  (*See generally* Doc. 91.)

        **Defendant's Documents**

        Defendant intends to present designated deposition testimony by video.

        1.      Deposition of Theodore Mort, Volume I

        2.      Deposition of Theodore Mort, Volume II

        3.      Deposition of Theodore Mort, Volume III

## N.    FURTHER DISCOVERY OR MOTIONS

        No further discovery is sought by either party.

## O.    STIPULATIONS

        None.

///

## P.    AMENDMENTS/ DISMISSALS

        None.

**Q.    SETTLEMENT NEGOTIATIONS**

The parties have a settlement conference with Magistrate Judge Sheila K. Oberto scheduled for June 23, 2022.

**R.    AGREED STATEMENT**

None.

**S.    SEPARATE TRIAL OF ISSUES**

None.

**T.    APPOINTMENT OF IMPARTIAL EXPERTS**

None requested.

**U.    ATTORNEYS' FEES**

An award of attorneys' fees may be sought, as appropriate, as a post-trial motion.

**V.    TRIAL DATE/ ESTIMATED LENGTH OF TRIAL**

Jury trial is set for **August 15, 2022**, at 8:30 a.m. before the Honorable Jennifer L. Thurston at the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, California. Trial is expected to last 7-10 days.

**W.    TRIAL PREPARATION AND SUBMISSIONS**

**1.    Trial Briefs**

The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or before **August 1, 2022**.

**2.    Jury Voir Dire**

The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **August 1, 2022.**

**3.    Jury Instructions & Verdict Form**

The parties shall serve, via e-mail or fax, their proposed jury instructions in accordance with Local Rule 163 and their proposed verdict form on one another no later than **July 1, 2022.** The parties shall conduct a conference to address their proposed jury instructions and verdict form no later than **July 11, 2022**. At the conference, the parties **SHALL** attempt to reach agreement on jury instructions

and verdict form for use at trial. The parties shall file all agreed-upon jury instructions and verdict form no later than **August 1, 2022** and identify such as the agreed-upon jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail a copy of the joint jury instructions and joint verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

**If and only if, the parties after genuine, reasonable and good faith effort** cannot agree upon certain specific jury instructions and verdict form, the parties shall file their respective proposed (disputed) jury instructions and proposed (disputed) verdict form no later than **August 1, 2022** and identify such as the disputed jury instructions and verdict forms.  At the same time, the parties **SHALL** lodge via e-mail, a copy of his/their own (disputed) jury instructions and proposed (disputed) verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible.  All jury instructions and verdict forms shall indicate the party submitting the instruction or verdict form (i.e., joint, plaintiff's, defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting the instruction.  Each instruction **SHALL** be numbered.

## X.      OBJECTIONS TO PRETRIAL ORDER

Any party may, within 14 days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order. Each party is also granted 7 days thereafter to respond to the other party's objections.  Such objections shall clearly specify the requested modifications, corrections, additions or deletions.  If no objections are filed, the order will become final without further order of this court.

The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and Local Rule 283 of this court, this order shall control the subsequent course of this action and shall be modified only to prevent manifest injustice.

///

## Y.      MISCELLANEOUS MATTERS

A.      As the parties are aware, the courthouses of the Eastern District of California were

22

closed to the public for over a year due to the COVID-19 pandemic. Both Fresno and Kern Counties—the two largest counties within the Fresno Division of the Eastern District—are considered to be a "very high risk" for the unvaccinated, and infection numbers have increased steadily in recent weeks. Consequently, although public health precautions are constantly evolving, unless otherwise ordered by the Court, everyone in the courtroom SHALL be fully vaccinated and wear a N95 or equivalent mask, which covers the nose and mouth.  The Court will provide witnesses a face shield to use while testifying.

**Because there have been no objections, the Court intends to seat a fully vaccinated jury.**

B.      To the extent that Dr. Allen is permitted to testify, it will occur via video transmission.

C.      Not less than 30 days before trial commences, plaintiff's counsel will provide to defense counsel a list of federal employees who plaintiff wishes to call and the date on which plaintiff intends to call each to testify, with Defendant then to arrange for federal employee witnesses to be present subject to meeting and conferring about any witness scheduling conflicts.

D.      Not less than 10 days before trial, plaintiff's counsel will provide to Defendant's counsel the anticipated order of witnesses.

E.      Not less than five days before trial, Defendant will provide its anticipated order of witnesses to plaintiff.

F.      The issues of back pay and front pay will be determined by the Court, as necessary. If relevant, the Court will consider after-acquired evidence in making this determination. However, factual disputes related to the after-acquired evidence, whether the defendant would have fired the defendant and had it known of the after-acquired evidence and when it would have fired the plaintiff based upon the after-acquired evidence are questions for the jury.

///
///
///
///

**Z.      COMPLIANCE**

Strict compliance with this order and its requirements is mandatory.  All parties and their

23

counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.

IT IS SO ORDERED.

Dated:   **July 7, 2022**

UNITED STATES DISTRICT JUDGE

24