1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11    THEODORE W. MR. MORT,                    Case No. 1:19-cv-0652-JLT-SKO

12                   Plaintiff,                 ORDER RE MOTIONS IN LIMINE

13    v.                                        (Docs. 99, 100, 101, 102, 104, 105, 106, 107,
                                                108, 109, 110, 111)
14    LOUIS DEJOY, Postmaster General
      United States Postal Service,
15

16                   Defendant.

17          The parties have submitted numerous motions in limine. The Court held a hearing on

18    August 4, 2022, to further examine the parties' disputes. For the reasons discussed during the

19    hearing and for those set forth below, the Court rules on each of the pending motions in limine as

20    follows:

21                          **I.      Factual Background**

22          Theodore W. Mr. Mort worked as a postal inspector in Fresno, California, for the United

23    States Postal Inspector Service until mid-March 2013 when his employment was terminated.

24    (Doc. 112 at 2-3.) Mr. Mort claims the USPIS took adverse employment action against him in

25    violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and

26    the Rehabilitation Act. (*Id.* at 1; Doc. 90 at 2.) The circumstances that led to Mr. Mort's

27    termination and give rise to his claims began in September 2011. (Doc. 112 at 2.)

28          On September 4, 2011, the USPIS Team Leader, Mack Gadsden, and another postal

                                                    1

inspector, Jennifer Hiland visited Mr. Mort's home to locate him for assistance with the

investigation of a mail-related crime, which was intended to be assigned to Mr. Mort. (*Id.*)

Though the parties disagree regarding the details of this visit, they agree that Gadsden knocked on

Mr. Mort's front and back door with no response. (*Id.*) Gadsden and Hiland left for the Fresno

Police Department and later returned to look for Mr. Mort. (*Id.*) Gadsden was armed during his

visits on Mr. Mort's property, though, as a law enforcement officer, carrying a firearm was

required. (*Id.*)

Mr. Mort took several days of sick leave following the incident on September 4, 2011.

(Doc. 112 at 2.) According to Mr. Mort, Gadsden's trespass onto his property prompted the need

for Mr. Mort to take stress-related sick leave, and his doctor cleared him to return to work within

a week. (Doc. 1 at 5, ¶ 24, 18, ¶ 126.) In mid-September 2011, USPIS placed Mr. Mort on

administrative leave pending medical documentation that he could return to work. (Doc. 112 at

2.) Mr. Mort filed police reports, Office of Inspector General (OIG) reports, and a Congressional

complaint regarding Gadsden's trespass on and damage to his property. (*Id.*) Mr. Mort also

sought a restraining order against Gadsden. (*Id.*) While on leave, Mr. Mort underwent a series of

investigations and medical fitness for duty examinations ordered by his supervisors at USPIS. (*Id.*

at 2-3.) In mid-October, USPIS placed Mr. Mort on further administrative leave pending the

results of an investigation by USPIS Office of Inspector General. (*Id.*) During this period, Mr.

Mort also filed a complaint with the Equal Employment Opportunity Commission alleging USPIS

denied his requests to return to work with an ADA accommodation. (*See* Doc. 1 at 24-31.)

Eventually, USPIS terminated Mr. Mort's employment in March 2013. (Doc. 112 at 3.)

Mr. Mort contends that the involuntary suspension in 2011 and employment termination

in 2013 constitute retaliation under Title VII, a violation under the ADA for a perceived mental

disability, and violation under the Rehabilitation Act for the multiple and unnecessary fitness for

duty examinations imposed by USPIS. (Doc. 1 at 16-21.) Mr. Mort seeks back pay, front pay, and

damages for severe emotional distress, loss of enjoyment of life, and loss of future earning

capacity. (*Id.* at 21.) Mr. Mort also seeks reinstatement as a postal inspector. (*Id.*) The parties

agree that the Court must determine the equitable forms of relief, including front pay, back pay,

1   and reinstatement. (Doc. 107 at 3; Doc. 123 at 2.) The jury shall decide matters of liability and

2   non-economic damages. (*See* Doc. 90 at 2.)

3                          **II.    Legal Standards Governing Motions in Limine**

4          "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

5   practice has developed pursuant to the district court's inherent authority to manage the course of

6   trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained motions in

7   limine allow parties to resolve evidentiary disputes ahead of trial "before attempted use of the

8   evidence before the jury." *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009).

9          Importantly, motions in limine seeking the exclusion of broad categories of evidence are

10  disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

11  The Court "is almost always better situated during the actual trial to assess the value and utility of

12  evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit

13  explained, "a better practice is to deal with questions of admissibility of evidence as they arise [in

14  trial]" as opposed to ruling on a motion in limine. *Sperberg,* 519 F.2d at 712. Nevertheless,

15  motions in limine are "an important tool available to the trial judge to ensure the expeditious and

16  evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family*

17  *Services*, 115 F.3d 436, 440 (7th Cir. 1997).

18         "[A] motion in limine should not be used to resolve factual disputes or weigh evidence,"

19  *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the

20  province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The

21  Court will bar use of the evidence in question only if the moving party establishes that the

22  evidence clearly is not admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440.

23         For example, under the Federal Rules of Evidence, any evidence that is not relevant is not

24  admissible. Fed. R. Evid. 402. To determine that evidence is relevant, the Court must find "(a) it

25  has a tendency to make a fact more or less probable than it would be without the evidence; and

26  (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Nevertheless,

27  relevant evidence may be excluded "if its probative value is substantially outweighed by the

28  danger of one or more of the following: unfair prejudice, confusing the issues, misleading the

jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible, such as for impeachment or if the opponent opens the door to allow for its admissibility. However, if this occurs, the proponent of the evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the rulings made here are binding on all parties and their witnesses and not merely on the moving party.

### III.   Motions in Limine

**A.    USPIS's Motion in Limine No. 1 (Doc. 99) – Evidence re: OIG's Investigation into Gadsden's Failure to Report a Speeding Ticket**

In approximately 2016 or 2017, Gadsden received a speeding ticket and delayed in reporting it to USPIS. (Doc. 114 at 2.) Following the OIG investigation in 2017/2018, it appears that in lieu of formal discipline, Gadsden transferred from his supervisor post in California and took a position in North Carolina, which resulted in a reduction in his salary and responsibilities. (Doc. 99 at 5.)

USPIS asks the Court to exclude this evidence as irrelevant under Federal Rule of Evidence 402, arguing it constitutes a collateral issue, which would waste time, confuse the jury, and create confusion. (Doc. 99 at 5.) USPIS further argues the OIG investigation of Gadsden's misconduct is irrelevant given Gadsden's position as a supervisor and the level of seriousness in his alleged misconduct are too distinguishable from Mr. Mort's situation to be used as a "comparator." (*Id.*)

Mr. Mort contends the OIG investigation into Gadsden's misconduct and the subsequent consequences are relevant to whether USPIS's legitimate, non-discriminatory reason for termination of Mr. Mort's employment is merely pretext. (Doc. 114 at 2.) Mr. Mort asserts that the treatment of Gadsden—who served as Mr. Mort's supervisor at the time the alleged discrimination began and who allegedly trespassed on Mr. Mort's property—is "highly probative

4

1  of Defendant's motive." (*Id.*

2       Comparators are employees similarly situated to the plaintiff and used as circumstantial

3  evidence of the defendant's discriminatory motive. *McDonnell Douglas Corp. v. Green*, 411 U.S.

4  792, 804 (1973) ("Especially relevant to a [showing of pretext] would be evidence that white

5  employees involved in acts against [the employer] of comparable seriousness . . . were

6  nevertheless retained or rehired."). Evidence that a similarly situated employee outside of

7  plaintiff's protected class who received more favorable treatment supports plaintiff's claim for

8  discrimination. *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874,

9  883 (9th Cir. 2007). Comparators must be similar in "all material respects," including having

10  similar jobs, displaying similar conduct, and engaging in "problematic conduct of comparable

11  seriousness." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003); *see also*

12  *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). However, "employees need not be identical,"

13  and "[m]ateriality depends on context and is a question of fact that cannot be mechanically

14  resolved." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011) (citations

15  and quotations omitted).

16       The Court finds the conduct of Mr. Mort and Gadsden is not substantially similar.

17  Defendant contends USPIS fired Mr. Mort for: (1) not including material pieces of information in

18  his request for a temporary restraining order against Gadsden[1]; and (2) withholding information

19  in an OIG investigation[2]. (Doc. 99 at 4.) The information Mr. Mort *did* provide was in a police

20  report and in a sworn document filed with the Fresno Superior Court and was relied upon by the

21  judge in determining the merits of the request for the restraining order. Misleading a judge about

22  material facts in a court filing is substantially different from delaying in reporting a speeding

23  ticket; the former implicates *Giglio* material, the latter does not. Thus, the Court concludes that

24  the type and severity of the conduct is dissimilar.

---

[1] Mr. Mort asserted in his request for the restraining order that Gadsden was armed at the time he visited Mr. Mort's property and described Gadsden as his coworker. He failed to tell the court that Gadsden—and Mr. Mort, for that matter—carried a firearm as part of their law enforcement duties with the USPIS duties and that Gadsden was actually Mr. Mort's supervisor.

[2] Mr. Mort failed to provide the OIG the name of his neighbor, whom Mr. Mort claimed to have witnessed Gadsden's entry onto Mr. Mort's property.

1   Mr. Mort implies that Gadsden was also stopped for a DUI in connection with the

2   speeding ticket. However, that is not Gadsden's testimony and, if there was any true confusion

3   about that point, the Court is stymied by the fact that Mr. Mort did not follow-up with additional

4   questions at the deposition or discovery requests to clarify the situation. At this time, Mr. Mort

5   would seek to offer mere speculation to support this suggestion, which is supported by nothing

6   more than Mr. Mort's unsupported interpretation of Gadsden's testimony. This is insufficient.

7   Consequently, the Court **GRANTS** USPIS's Motion in Limine No. 1.

8   **B.     USPIS's Motion in Limine No. 2 (Doc. 100) – Statements by Dr. Jana Price-Sharps,**

9   **Dr. Bruce Dixon, and Judge Rosemary McGuire**

10   USPIS's Motion in Limine No. 2 requests that the Court exclude three categories of

11   statements: (1) statements by Dr. Jana Price-Sharps, Mr. Mort's treating psychologist, (2)

12   statements by USPIS Medical Director Dr. Bruce Dixon during a conversation with Dr. Price-

13   Sharps allegedly overheard by Mr. Mort, and (3) statements by state-court Judge Rosemary

14   McGuire during a hearing after which she dissolved a temporary restraining order that the court

15   had made at Mr. Mort's request. (Doc. 100 at 3.) USPIS contends these statements constitute

16   hearsay without exception, given that Mr. Mort previously agreed not to offer testimony from Dr.

17   Price-Sharps at trial and Dr. Dixon is now deceased. (*Id.* at 3-4.)

18   Mr. Mort argues the Court should deny the motion as premature because USPIS did not

19   sufficiently identify the statements it seeks to exclude. (Doc. 115 at 2.) Mr. Mort contends he

20   "cannot adequately respond to the motion to determine whether the statements are non-hearsay or

21   are subject to any number of exceptions." (*Id.*) Mr. Mort's uncorroborated argument has little

22   merit. During the motions in limine hearing, counsel for Mr. Mort agreed that Mr. Mort was in

23   the best position to know precisely what the statements made in each category that USPIS wishes

24   to exclude. Indeed, Mr. Mort allegedly had first had knowledge of each—as the patient receiving

25   treatment from Dr. Price-Sharps; as the individual alleged to have overheard the conversation

26   between Dr. Price-Sharps and Dr. Dixon; and as a party to the hearing presided over by Judge

27   McGuire.

28   Notably, the statements Mr. Mort attributes to Dr. Dixon are contained in his complaint

6

(Doc. 1 at 9 ¶¶ 53-56) and the USPIS cited to the complaint in its motion in limine (Doc. 100 at 3). Mr. Mort's argument that he "cannot adequately respond to the motion to determine whether the statements are non-hearsay or are subject to any number of exceptions" (Doc. 115 at 2) cannot be reconciled with the circumstances with which these statements occurred.

Mr. Mort also argues that "the purported statements of Price-Sharps, Dixon, and McGuire may each either be non-hearsay . . . or subject to an applicable hearsay exception." (Doc. 115 at 2.) Despite listing several potential exceptions and non-hearsay uses in his response, Mr. Mort has failed to carry his burden to show that any exception applies. *Sugar Ass'n v. McNeil-PPC, Inc.*, 2008 WL 11338268, at *3 (C.D. Cal. Jan. 7, 2008) (shifting burden to the non-movant and proponent of the evidence to establish a hearsay exception applies).

Regarding statements by Dr. Price-Sharps, Mr. Mort contends he can offer these statements under the business records exception under Federal Rule of Evidence 803(6). (Doc. 115 at 2.) Mr. Mort has not satisfied the requirements of this exception. Under Rule 803(6), he must identify a witness who can properly authenticate the document—testifying to when the record was made, whether it was kept in course of a regularly conducted activity, and whether such record keeping is a regular practice of that activity. Fed. R. Evid. 803(6). Mr. Mort has not identified anyone on his trial witness list with first-hand knowledge of Dr. Price-Sharps's records or the circumstances of their creation. Moreover, the business records exception does not cure Mr. Mort's obligation to disclose an expert to testify regarding any expert opinions, which are likely contained within Dr. Price-Sharps's treatment notes. Mr. Mort has failed to designate anyone who can establish the business records exception. Consequently, the Court **GRANTS** USPIS's motion with respect to statements by Dr. Price-Sharps.

Second, Mr. Mort argues Dr. Dixon's statements fall under the exception for admissions of a party opponent under Federal Rule of Evidence 801(d)(2)(D). Mr. Mort did not, however, establish that Dr. Dixon's statements were made on a matter within the scope of his employment or while acting as an agent for USPIS, as required by the rule. Fed. R. Evid. 801(d)(2)(D). Mr. Mort also makes cursory arguments that Dr. Dixon's statements fall under the exceptions of Rule 803(4) for statements in the course of giving medical treatment or 803(3) for statements that bear

1    on the state of mind of the declarant. (Doc. 115 at 3.) Reliance on these exceptions likewise fails.

2    Rule 803(4) applies to statements made for the purpose of medical diagnosis or treatment

3    and which describe "medical history; past or present symptoms or sensations; their inception; or

4    their general cause." Fed. R. Evid. 803(4). None of the statements contained in Mr. Mort's

5    complaint qualify under this exception. Despite argument by counsel that Dr. Dixon intended to

6    discuss the data underlying Mr. Mort's diagnosis and the prescribed treatment, nothing in the

7    evidence before the Court supports this conclusion. Mr. Mort similarly fails to satisfy his burden

8    of showing the exception under Rule 803 applies, because he has not explained the relevance Dr.

9    Dixon's statement of mind has on his claims or USPIS's defense.

10   Mr. Mort further argues that the statements he overheard may be used as impeachment

11   evidence to rebut statements contained in Dr. Dixon's EEO affidavit. (Doc. 115 at 2-3.). As

12   explained below, USPIS intends to admit the affidavit Dr. Dixon submitted as part of the EEOC

13   investigation. (Doc. 102.) Before Mr. Mort may testify as to any statements in Dr. Dixon's

14   conversation with Dr. Price-Sharps, Mr. Mort must first provide indicia of reliability to establish

15   this conversation occurred and these statements were made. *See* Fed. R. Evid. 104.

16   Finally, regarding Judge McGuire's statements, Mr. Mort relies on Federal Rule of

17   Evidence 803(21) for reputation evidence. (Doc. 115 at 3.) Rule 803(21) requires such reputation

18   evidence to be offered from "among a person's associates or in the community concerning the

19   person's behavior." Mr. Mort offers no argument or evidence to show Judge McGuire qualifies

20   under this rule—she is neither an associate of Mr. Mort's nor one in his community. Moreover, as

21   noted in USPIS's reply, statements made by a judge are likely to be given undue weight by a jury,

22   thus creating a serious danger of unfair prejudice. (Doc. 133 at 6 (citing *U.S. v. Sine*, 493 F.3d

23   1021, 1033-34, 1035-36 (9th Cir. 2007); see also *United States v. Chivoski*, 742 Fed. Appx'x 299

24   (9th Cir. 2018) (affirming exclusion of statements by state-court judge in transcript of custody

25   proceedings).) Given the little relevance, if any, Judge McGuire's statements have to Mr. Mort's

26   claims, the risk of unfair prejudice clearly outweighs their probative value. Fed. R. Evid. 403.

27   Because Mr. Mort failed to meet his burden that any exception or non-hearsay use applies

28   to the statements USPIS seeks to exclude, the Court **GRANTS** USPIS's Motion in Limine No. 2,

1   except that the statements of Dr. Dixon may be introduced **_only if_** the USPIS seeks to introduce

2   Dr. Dixon's sworn statements to the EEOC and **_only if_** the Court determines after conducting a

3   Rule 104 hearing, with Mr. Mort presenting the testimony of Dr. Price-Sharps, that the evidence

4   is reliable.

5   **C.    USPIS's Motion in Limine No. 3 (Doc. 101) – Mr. Mort's Prior OIG Investigation**

6        USPIS's Motion in Limine No. 3 seeks to admit evidence concerning Mr. Mort's

7   misconduct before USPIS hired him and which USPIS learned about only after it terminated Mr.

8   Mort's employment. (Doc. 101 at 3.) In particular, during discovery, USPIS discovered that Mr.

9   Mort inaccurately testified during an EEOC proceeding and made false statements during

10  Treasury OIG investigations. (*Id.* at 4.)

11       During the EEOC proceeding, Mr. Mort testified regarding a four-month suspension he

12  received while working at Treasury OIG. (*Id.*) Mr. Mort explained his suspension occurred after

13  he found the mother of his child, who was pregnant at the time, with narcotics. (*Id.*) Mr. Mort

14  explained some of the reasons for his suspension but only on cross examination did he admit to

15  several, more serious offenses. (*Id.*) The underlying OIG investigations concluded that Mr. Mort

16  had provided false and misleading statements to investigators; used a law enforcement database to

17  conduct unauthorized queries; failed to properly secure his government assigned firearm; and

18  made false or misleading statements under oath. (*Id.* at 5.)

19       USPIS argues the EEOC proceeding and reports from the OIG investigation are

20  admissible because they relate to a defense to Mr. Mort's disability discrimination claim—that

21  Mr. Mort was not qualified to be a postal inspector. (*Id.* at 6-7.) USPIS contends that Mr. Mort's

22  false statements in the OIG Treasury investigation could become impeachment evidence against

23  Mr. Mort when he testifies as part of his duties as a postal inspector. (*Id.*) This could disqualify

24  Mr. Mort as a postal inspector because he could not adequately perform an essential function his

25  job. (*Id.* at 7.)

26       In opposition, Mr. Mort responds that USPIS's multiple admissions and attestations to Mr.

27  Mort's qualifications as a postal inspector foreclose the argument that he was unqualified to be a

28  postal inspector. (Doc. 117 at 2.) Mr. Mort explains that every warrant application submitted by

1   USPIS during Mr. Mort's employment as a postal inspector affirmed his suitability for that

2   position. (*Id.* at 23-3. Mr. Mort argues, because warrant applications are judicial admissions, these

3   statements are binding on USPIS, and it cannot now rely on hindsight bias to assess whether Mr.

4   Mort was qualified for his position at the time of his termination. (*Id.* at 2-3.) Mr. Mort further

5   contends that any relevance of evidence negating his qualifications that was discovered after his

6   termination is only relevant for the "after-acquired evidence affirmative defense." (*Id.* at 4.)

7        First, Mr. Mort's argument that USPIS foreclosed its ability to argue Mr. Mort lacked

8   qualifications as a postal inspector due to the "judicial admissions" in its warrant applications

9   lacks merit because it fails to consider that USPIS was unaware of his prior misconduct at the

10  time USPIS applied for the warrant applications. Indeed, the USPIS claims that Mr. Mort's own

11  lack of candor with USPIS when applying for the position as a postal inspector prevented it from

12  knowing about Mr. Mort's prior false statements and misfeasance which may have led USPIS to

13  question his suitability for the position. (See Doc. 101 at 7.)

14       Second, the primary issue raised by the parties is what, if any, relevance Mr. Mort's prior

15  OIG investigations have on his current claim. In *McKennon v. Nashville Banner Publishing*, the

16  Supreme Court established the "general rule" that evidence bearing on the plaintiff's job

17  qualifications of which the employer was unaware at the time of the adverse employment

18  decision is relevant only to determine equitable remedies. 513 U.S. 352, 359-62 (1995). If an

19  employer can establish that it would have discharged the employee for misconduct it discovered

20  after the wrongful termination, reinstatement and front pay are not appropriate. *McKennon*, 513

21  U.S. at 359-62. To introduce after-acquired evidence, the employer must it show "it *could* have

22  fired an employee for the later-discovered misconduct, [and] that it *would* in fact have done so."

23  *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 759 (9th Cir. 1996) (emphasis in

24  original). Then, the district court may consider the appropriate impact on front pay and

25  reinstatement. *Id.*

26       USPIS has presented sufficient evidence that the misconduct uncovered in the OIG

27  investigations indicate that USPIS would have terminated Mr. Mort on this basis. In his

28  deposition, Mr. Mort himself explained that government investigators who have made sufficient

"false or misleading statements" may be considered "Giglio-impaired" and rendered unable to testify in court. (Doc. 99-5 at 3.) The job description of a postal inspector includes serving as "a witness in court and administrative proceedings" as a requirement of the position. (Doc. 99-6 at 1.). Therefore, the after-acquired evidence of the OIG investigations may bear on determinations of reinstatement and front pay.

However, because equitable remedies such as reinstatement and front pay will be determined by the Court and not the jury, USPIS has not yet shown that the OIG investigations are relevant to any issue before the jury. Because the decision makers at USPIS did not know the extent of Mr. Mort's misconduct at the Treasury OIG, it has no relevance to their mindset or motive in deciding to terminate Mr. Mort's employment. *See McKennon*, 513 U.S. at 360 ("The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."). Accordingly, to the extent USPIS intends to offer the OIG investigations to evidence Mr. Mort's lack of qualifications as a postal inspector, the **GRANTS** the request in so far as USPIS seeks to present the evidence to the Court after the jury determines liability.[3]

**D.**     **USPIS's Motion in Limine No. 4 (Doc. 102) – EEO Affidavit by Dr. Bruce Dixon**

USPIS's Motion in Limine No. 4 seeks to admit an affidavit by Dr. Bruce Dixon to the EEOC as part of its investigation of Mr. Mort's complaint. (Doc. 102 at 3.) Dr. Dixon was the medical director for the USPS in 2012 when Mr. Mort received a fitness for duty examination. (*Id.*) Dr. Dixon is now deceased, and USPIS argues the exception to hearsay under Rule 807 renders his EEO affidavit admissible. (*Id.*) USPIS further contends the EEO affidavit has sufficient guarantees of trustworthiness because Dr. Dixon signed it under penalty of perjury and close in time to when Dr. Dixon decided to refer Mr. Mort for his examination. (*Id.*) Mr. Mort did not dispute the applicability of the hearsay exception but rather contested the relevancy of the affidavit and USPIS's ability to authenticate it. (Doc. 118 at 2.)

---

[3] USPIS argues in its reply that this evidence may be presented to the jury because it bears on Mr. Mort's character for truthfulness. The Court's ruling does not preclude the use of this evidence to demonstrate that Mr. Mort previously lied under oath, if appropriate. Fed. R. Evid. 608(b).

In its reply, USPIS explains Dr. Dixon's affidavit is probative of USPIS's alleged legitimate, non-discriminatory reason for the USPIS's decision to send Mr. Mort for a psychological fitness for duty examination because Dr. Dixon "believed there was justifiable doubt concerning Mr. Mort's ability to perform" his postal inspector duties. (Doc. 135 at 2.) USPIS also argues Dr. Dixon's EEO affidavit is self-authenticating under Federal Rule of Evidence 902 because he signed it under penalty of perjury and the EEO investigator included it in the final report of Mr. Mort's EEO complaint. (*Id.*) The Court agrees Dr. Dixon's affidavit has sufficient relevance to satisfy Rules 402 and 403 and is self-authenticating under Rule 902. Under Rule 402, Dr. Dixon has probative value related to the USPIS decision-makers' state of mind when they required Mr. Mort to undergo additional fitness for duty examinations, which Mr. Mort contends was an adverse employment action motivated by discrimination. (Doc. 1 at 11, ¶¶ 65, 68.) In addition, under Rule 902(4), a copy of an official record—such as the findings from an administrative agency like the EEOC—is self-authenticating if it bears "a signature purporting to be an attestation." Fed. R. Evid. 902(1)(B), (4). When addressing this motion during the hearing, the parties agreed certain portions of the EEO affidavit contain multiple levels of hearsay, to which Rule 807 does not apply. The parties further agreed to confer and redact these portions. Because Defendant has satisfied the basic admissibility requirements for Dr. Dixon's EEO affidavit, the Court **GRANTS** Motion in Limine No. 4 and will admit the agreed-upon redacted EEO affidavit.

**E.      USPIS's Motion in Limine No. 5 (Doc. 103) – Slater Moffat Letter**

USPIS's Motion in Limine No. 5 seeks to exclude an exhibit on Mr. Mort's trial exhibit list labeled as "04/05/13 Slater Moffat letter to Plaintiff, Subject: Damages for Wrongful Termination with attachments" ("Slater Moffat Letter"). (Doc. 103 at 3.) The Slater Moffat Letter and attachments contain information related to a valuation of the salary and benefits that Mr. Mort allegedly lost due to his termination from the USPIS, prepared by the certified public accountants at Slater Moffat Associates, LLP. (*Id.*) USPIS presents three bases to exclude the exhibit: (1) it contains multiple levels of hearsay with no exception; (2) it includes expert testimony for which no expert exists on Mr. Mort's witness list to explain the information; and (3)

1   the valuation of salary and benefits is at most relevant to determinations of back pay and front

2   pay, which are equitable issues for the Court, not the jury. (*Id.* at 3-6.)

3        First, regarding the hearsay objection, USPIS argues the Slater Moffat Letter made

4   impermissible assumptions, such as the timing of Mr. Mort's salary progression, life insurance

5   premium payments, and inflation and discount rates. (Doc. 103 at 3.) USPIS also contends the

6   letter itself is hearsay. (*Id.*) According to Defendant, the business records exception does not

7   apply because the letter was prepared for litigation purposes. (*Id.* at 4 (citing *Clark v. City of Los*

8   *Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) ("A document prepared for purposes of litigation is

9   not a business record because it is lacking in trustworthiness.")). Moreover, USPIS notes that Mr.

10  Mort's witness list does not identify anyone who would establish the foundational elements

11  required by the exception under Federal Rule of Evidence 803(6)(D). (*Id.* at 4.)

12       Second, USPIS argues the Slater Moffat Letter addresses subject matters that require

13  specialized knowledge, such as the net present value of salary and benefits over an extended

14  period of time. (Doc. 103 at 4-5 (citing *Bennion & Deville Fine Homes, Inc. v. Windermere Real*

15  *Estate Servs Co.*, 2017 WL 10354134, at *3 (C.D. Cal. May 31, 2017) ("The calculation of net

16  present values is beyond the typical layman's mathematical skills and therefore having an expert

17  provide those calculations would assist the jury.").) Again, Mr. Mort's trial witness list does not

18  identify an expert to testify regarding this subject matter. (*Id.* at 4-5.)

19       Third, USPIS argues the information contained in the Slater Moffat Letter relate only to

20  issues of back pay and front pay, which are irrelevant to any issue the jury must decide. (Doc. 103

21  at 5.) Rather, these are equitable issues for the Court. *See Malone v. Potter*, 2009 WL 10672769,

22  at **1-2 (C.D. Cal. Feb. 27, 2009) (recognizing that back pay and front pay are equitable

23  remedies that must be tried to the court, not to the jury, and bifurcating issues of back and front

24  pay from jury trial for determination after jury found defendant liable).

25       Mr. Mort provided very little response to USPIS's motion. Mr. Mort primarily argues that

26  this motion is "irreconcilable" with USPIS's Motion in Limine No. 8, in which USPIS contends

27  Mr. Mort provided no computation of the damages sought as required under Rule 26(a)(1)(A)(iii).

28  (Doc. 119 at 2.) Mr. Mort plainly states he "will authenticate the letter he received," without

1   further explanation. (*Id.*) Finally, Mr. Mort agrees the letter is relevant for the purposes of back

2   pay or front pay and asserts "the Court will be immune from any potential prejudice." (*Id.*)

3   Regardless of whether the Slater Moffat Letter contradicts USPIS's Motion in Limine 8 or

4   whether Mr. Mort can authenticate it, nothing in Mr. Mort's response indicates how he will

5   overcome the hearsay objection. Importantly, Mr. Mort has not explained how the Slater Moffat

6   Letter could fall under an exception to hearsay or qualify for a non-hearsay use. Because the letter

7   appears to contain calculations designed to support Mr. Mort's claims for front pay and back pay

8   damages, it appears to have been prepared for purposes of litigation, therefore falling outside the

9   business records exception. Even if only admitted to the Court, not the jury, to determine

10  equitable issues, the Federal Rules of Evidence still apply. Fed. R. Evid. 1101; *see also Batelli v.*

11  *Kagan & Gaines Co.*, 236 F.2d 167, 170 (9th Cir. 1956). Thus, the Court **GRANTS** Defendant's

12  Motion in Limine No. 5.

13  **F.      USPIS's Motion in Limine No. 6 (Doc. 104) – Testimony of Keith D. Silva**

14          USPIS's Motion in Limine No. 6 seeks to preclude Keith D. Silva from testifying, who is

15  currently on Mr. Mort's trial witness list. (Doc. 104 at 3.) Mr. Silva previously worked for USPIS

16  as the Oakland MT Team Leader. (Doc. 128-2 at 1.) According to USPIS, Mr. Mort did not

17  identify Mr. Silva as a potential witness in his initial disclosures or during any supplemental

18  discovery disclosures, as required by Federal Rule of Civil Procedure 26(a). (Doc. 104 at 3.)

19  USPIS argues this failure triggers the "self-executing" or "automatic sanction" under Federal

20  Rule of Civil Procedure 37(c)(1), which precludes a party from using a witness at trial when the

21  offering party did not identify that witness during discovery. (*Id.*) USPIS further argues that

22  because Mr. Mort only identified Jennifer Vincent-Hiland as a similarly situated employee, Mr.

23  Mort cannot not use Mr. Silva to testify regarding other comparators. (*Id.*)

24          In opposition, Mr. Mort argues that USPIS had sufficient notice that he intended to rely on

25  Mr. Silva's testimony. (Doc. 120 at 2.) Mr. Mort also argues Mr. Silva's testimony is highly

26  relevant to prove USPIS's own discovery misconduct during the course of this litigation,

27  including alleging withholding or spoilation of documents. (Doc. 120 at 2.) Mr. Silva also

28  allegedly has relevant information regarding similarly situated employees with severe prior work

1    misconduct. (*Id.*) However during the hearing to address this motion, counsel for Mr. Mort

2    admitted that Mr. Silva does not have percipient knowledge of the employment consequences, if

3    any, imposed on the allegedly similarly situated employees. Mr. Mort has not designated any

4    other witness who can testify to this information. Without evidence of different treatment, the

5    similarly situated employee's misconduct is irrelevant as comparator evidence.

6           Moreover, the Court finds that exclusion of Mr. Silva's testimony is appropriate. The

7    Court has "particularly wide latitude" under Rule 37(c)(1) to determine appropriate sanctions for

8    failure to disclose a witness under Rule 26(a). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259

9    F.3d 1101 (9th Cir. 2001). The Court may exclude evidence under Rule 37(c)(1) unless the party

10   that did not comply with Rule 26 can show such failure was harmless or substantially justified.

11   Mr. Mort has not satisfied this burden. Though Mr. Mort contends that USPIS had sufficient

12   notice of the likelihood that it would call Mr. Silva to testify or the relevance of his testimony,

13   Mr. Mort has not provided evidence to suggest such notice existed. First, Mr. Mort points to a

14   letter sent by Mr. Mort's counsel which allegedly notified USPIS of Mr. Silva's knowledge of

15   comparator information regarding similarly situated employee misconduct to which Mr. Silva

16   may testify. (Doc. 120-1 at 22-23.) However, the letter does not contain any mention of or

17   reference to Mr. Silva. It is, therefore, unclear how this letter serves to notify USPIS of Mr.

18   Silva's relevance to the case. Second, Mr. Mort relies upon an email from himself to Mr. Galetti,

19   who participated in the decision to place Mr. Mort on administrative leave. (Doc. 99-8 at 2; Doc.

20   120-1 at 25.) In this email, Mr. Mort describes a conversation between Mr. Galetti and Mr. Silva,

21   in which Mr. Galetti referred to Mr. Mort as "crazy." (Doc. 120-1 at 25.) Mr. Mort contends that

22   having produced this email, "Defendant has long been on notice that Silva was a witness to AIC

23   Galletti's state of mind concerning Plaintiff." (Doc. 120 at 2.) Mr. Mort provided only a single

24   document that was produced during discovery and which references Mr. Silva. Such passing

25   reference would not have reasonably put USPIS on notice of the relevance of Mr. Silva's

26   testimony such that he would likely be called as a witness. *See Ollier v. Sweetwater Union High*

27   *School Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) ("That another witness has made a passing

28   reference in a deposition to a person with knowledge or responsibilities who could conceivably be

1   a witness does not satisfy a party's disclosure obligations. An adverse party should not have to

2   guess which undisclosed witnesses may be called to testify."); *but see Booth*, 2013 WL 3541615,

3   *11 ("A party may show lack of surprise and harmlessness by explaining how the opposing side

4   had full notice that of the existence of the witness and fully understood the important role he/she

5   had in relation to the facts of the case.").

6          Contrary to Mr. Mort's suggestions that USPIS should have discovered Mr. Silva's

7   importance to the case through his discovery, nothing in Mr. Mort's requests would have led

8   USPIS to this result. Mr. Mort submitted an email from Mr. Silva, dated February 26, 2016,

9   containing a summary and full report of his investigation of another postal inspector's

10  misconduct. (Doc. 120-1 at 27-49.) Though this email seemingly contains arguably relevant

11  information regarding comparator information, Mr. Mort's discovery requests for such

12  information limit the scope to documents created from 2009 through 2013. (Doc. 120-1 at 5-7.)

13  Thus, even a diligent search by USPIS, following the terms of Mr. Mort's requests, would not

14  have produced the email sent by Mr. Silva on February 26, 2016. Because Mr. Mort did not

15  provide a copy of the email from Mr. Silva until long after the close of discovery, USPIS could

16  not have had notice of Mr. Silva's relevance to Mr. Mort's claims. Also, Mr. Mort has not shown

17  a substantial justification or harmlessness of his failure to comply with Rule 26. Thus, the Court

18  **GRANTS** USPIS's Motion in Limine No. 6.

19  **G.    USPIS's Motion in Limine No. 7 (Doc. 105) – The Silva Email**

20         USPIS's Motion in Limine No. 7 seeks to exclude an email described on Mr. Mort's

21  exhibit list as "02/26/16 Email Keith Silva to Rho, Nunez, Rickher, McKeown subject FW:

22  Baumgart Report, with attachments" ("Silva Email"), and any related testimony. (Doc. 105 at 3;

23  Doc. 112 at 15.) USPIS set forth three reasons for excluding the Silva Email. First, because Mr.

24  Mort never disclosed the Silva Email during discovery, as required by Federal Rule of Civil

25  Procedure 26(a), Rule 37(c) prevents him from relying on it at trial. (Doc. 105 at 4-5.) Second,

26  USPIS argues the information in the Silva Email and attached report contain privileged

27

28

communication.[4] (*Id.* at 4.) Third, USPIS argues that because Mr. Mort failed to provide a copy of the exhibit to USPIS as required by the Court's Pretrial Order, Mr. Mort should be prohibited from relying on it. (*Id.* at 4-5.)

In his response, Mr. Mort alleges that USPIS failed to meet and confer on the issues posed in this motion, as required by the Court's Pretrial Order. (Doc. 121 at 2; Doc. 112 at 4.) In its reply, USPIS disputes this fact. (Doc. 138 at 3.) Mr. Mort also contends that his failure to include the Silva email with the remainder of his trial exhibits was merely counsel's oversight and not intentionally withheld. (Doc. 121 at 2.) In his written response, Mr. Mort explained that the Silva Email "was discovered by Plaintiff's counsel after the close of discovery" (*id.*), but counsel admitted at the hearing he has had it in his file since the EEO investigation in 2016.

Regardless of when and which party should have discovered and produced this document, it has no relevance. The Silva Email does not explain what, if any, disciplinary action the USPIS imposed following Mr. Silva's investigation of the postal inspector's misconduct. According to the Court's ruling regarding Motion in Limine No. 6, Mr. Silva is not permitted to testify (nor does he have the requisite percipient knowledge to do so). At the hearing, Mr. Patten admitted that Mr. Mort has not identified any other witness with knowledge of any adverse employment action resulting from Mr. Silva's investigation. Without evidence of the adverse employment action, the Silva Email has no relevance to Mr. Mort's claims because it does not qualify as comparator evidence. *See McDonnell Douglas*, 411 U.S. at 804.

Turning to the allegations of non-compliance with discovery procedure, even if a trial witness could supply evidence to render the Silva Email relevant, Mr. Mort's counsel during discovery warrants exclusion. Most notably, Mr. Mort's counsel admitted he originally discovered this email in 2016 during the EEOC investigation but decided not to use the document during the EEOC hearing. Despite Rule 26's requirement to disclose "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses," Mr. Mort withheld the Silva Email during discovery. Mr. Mort argues that

---

[4] The Court will address the attorney-client privilege matter, to the extent it is not mooted by this motion, in the pending motion for protective order. (*See* Doc. 128.)

1    USPIS should have discovered the document based on Mr. Mort's requests for documents

2    because it contains relevant comparator information. (Doc. 121 at 2.) In briefing and during the

3    hearing, Mr. Mort failed to identify any request that would encompass the Silva Email, which is

4    dated February 26, 2016. (Doc. 120-1 at 27.) Mr. Mort's discovery requests excluded comparator

5    information after 2013. (*See, e.g.*, Doc. 120-1 at 5-7.) Mr. Mort, therefore, has not provided a

6    sufficient justification for withholding the Silva Email from USPIS. The Court finds the sanction

7    of exclusion under Rule 37 is warranted. Accordingly, the Court **GRANTS** USPIS's Motion in

8    Limine No. 7. Because Mr. Mort may not introduce the Silva Email for any purpose at trial, the

9    Court finds any objection based on attorney-client privilege is moot.

10    **H.**     **USPIS's Motion in Limine No. 8 (Doc. 106) – Computation of Damages**

11    USPIS's Motion in Limine No. 8 requests that the Court prohibit any evidence or

12    testimony by Mr. Mort about economic damages calculations and prevent presenting a specific

13    amount of non-economic damages to the jury. (Doc. 106 at 3.) USPIS argues Mr. Mort did not

14    provide sufficient calculations of his economic and non-economic damages to satisfy Rule

15    26(a)(1)(A)(iii). (*Id.* at 3-4.) Rule 26(a)(1)(A)(iii) requires the plaintiff to provide "a computation

16    of each category of damages claimed." The plaintiff is also required to "make available for

17    inspection and copying . . . the documents or other evidentiary material . . . on which each

18    computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(e) creates an obligation for

19    parties to supplement the information disclosed under Rule 26(a) in a timely manner, including its

20    computation of damages. Fed. R. Civ. P. 26(e). "Rule 26 does not elaborate on the level of

21    specificity required in the initial damages disclosure. However, cases have held that the

22    computation of damages required by Rule 26(a)(1)(C) contemplates some analysis; for instance,

23    in a claim for lost wages, there should be some information related to hours worked and pay rate."

24    *Maharaj v. California Bank & Trust*, 288 F.R.D. 458, 463 (E.D. Cal. 2013) (internal quotation

25    marks and citations omitted).

26    If a party does not comply with its Rule 26 obligations, "the party is not allowed to use

27    that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

28    failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The burden of showing

the failure to disclose was substantially justified or harmless lies with the party facing sanctions. *R & R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012). Though exclusion Rule 37 may be "automatic" or "self-executing," the Court retains considerable discretion when determining the appropriate sanctions. *Yeti by Molly*, 259 F.3d at 1106.

According to USPIS, Mr. Mort's initial disclosures merely listed the categories of recovery—back pay, lost pension benefits, front pay, and emotional distress—and asserted these damages are "significant" and a "jury will likely award substantial damages." (Doc. 106 at 4-5.) USPIS contends Mr. Mort's subsequent discovery responses on this topic were "substantially identical." (*Id.* at 5.) In response, Mr. Mort points to three instances which allegedly satisfied his Rule 26 requirement to disclose computations of damages sought. First, Mr. Mort argues that during the three-day administrative hearing, he offered proof of his damages. (Doc. 122 at 2.) Mr. Mort attempted to support this argument with a transcript of the hearing, supposedly as Exhibit A to his response, but no document was included with the cover sheet for Exhibit A. (*See* Doc. 122-1 at 3.) Whether inadvertent or not, the Court cannot consider evidence not before it.

Second, Mr. Mort argues his initial disclosures sufficiently explained the proof of his damages. (Doc. 122 at 2; Doc. 122-1 at 5-10.) Mr. Mort did not, however, specifically identify which computation or calculations in his initial disclosures that supposedly satisfy the Rule 26 requirement. The Court has reviewed the initial disclosures and finds the only evidence of a damages computation relates to the claim for backpay. In the disclosures, Mr. Mort states his "back pay salary damages already exceed $1,000,000.00" and "are calculated based upon his highest-level pay period multiplied by the pay periods since his unlawful termination." (Doc. 122-1 at 8.)

In its reply, USPIS argues this disclosure fails to provide even a "lump sum" of back pay damages. (Doc. 139 at 2-3 (citing *City & Count of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (noting that a "plaintiff should provide more than a lump sum statement of the damages allegedly sustained").) USPIS contends the disclosures are insufficient because it merely states back pay *exceeds* $1 million and fails to account for the net present value. (*Id.*) With respect to back pay, the Court finds the initial disclosures satisfy Rule 26. Though Mr.

19

1    Mort did not provide a precise calculation, he provided the basic inputs by which he intends to

2    compute back pay: highest-level pay period multiplied by the number of periods. Because the

3    number of periods will continue to increase up until trial, Mr. Mort could not provide a precise

4    number for the computation. *See Kallen v. Tillamook Cnty. Creamery Ass'n*, 2014 WL 4384708,

5    at *2 (C.D. Cal. Sept. 4, 2014) (calculating back pay from the time of plaintiff's termination to

6    the date of the order determining remedies). Additionally, Mr. Mort's pay level is publicly

7    available information, published by the federal government, and is admissible at trial. *See* Fed. R.

8    Evid. 902(4)(B). To the extent Mr. Mort's calculation is incorrect for failure to account for the net

9    present value, this goes to the weight, not the admissibility of Mr. Mort's computations.

10        Mr. Mort, however, did not disclose the same basis for his other category of damages. He

11   did nothing more than list a legal basis to recover front pay, pension/retirement benefits, or other

12   economic damages. (Doc. 122-1 at 8-10.) This does not suffice to meet his obligations under Rule

13   26. To supplement these disclosures, Mr. Mort points to a third exhibit, an email regarding

14   settlement negotiations, dated July 7, 2022, to satisfy the Rule 26 disclosure obligation. (Doc. 122

15   at 2; Doc. 122-1 at 13-14.) This email contains an itemized list of damages, including back pay,

16   front pay, lost healthcare benefits, lost retirement or pension benefits, and other alleged

17   consequential damages. (Doc. 122-1 at 13-14.) The July 7, 2022 email includes both the total

18   amounts for each type of damages and the computations or rough calculations used to reach the

19   totals. (*Id.*)

20        USPIS argues the July 7, 2022 email containing settlement negotiations does not cure Mr.

21   Mort's failure to comply with Rule 26 because demands exchanged in settlement negotiations

22   cannot be used to prove the validity or amount of a disputed claim under Rule 408, and

23   "settlement communications after the close of discovery" do not satisfy the initial disclosures

24   requirements. (Doc. 139 at 3.) Regardless of whether Rule 408 would preclude Mr. Mort from

25   relying on a settlement exchange to establish compliance with discovery obligations, the fact that

26   the settlement communication email (dated July 7, 2022) was exchanged well after the close of

27   discovery (in March 2021) is dispositive. Mr. Mort provided no explanation for his failure to

28   provide the computations for front pay and lost employment benefits in his initial disclosures or

1    any supplements thereto. *See Booth*, 2013 WL 3541615, at *11 (granting motion to preclude

2    sixteen witnesses from testifying that plaintiff did not identify until only a few weeks before trial,

3    which gave the government no time to cure any prejudice and gave no explanation for failure to

4    disclose earlier).

5          However, USPIS also has not explained why it did not attempt to notify Mr. Mort of his

6    deficient responses during discovery. *See Dhaliwal v. KS Chandi & Sons*, Inc., 2014 WL

7    3057520, *2 (E.D. Cal. July 7, 2014) (affirming decision not to strike the declaration because

8    plaintiffs suffered no prejudice where they "waited until after discovery was closed to raise the

9    issue of an incomplete and insufficient initial disclosure statement"). For example, during Mr.

10   Mort's deposition, USPIS had an opportunity to gain information related to potential damages,

11   such as his salary before termination and how long Mr. Mort intended to work. These factors

12   would guide USPIS in determining potential front pay damages.

13         Accordingly, the Court, in its discretion, finds Mr. Mort's non-compliance with Rule 26

14   warrants some exclusion of economic damages evidence. Mr. Mort may testify regarding his

15   salary and how long he intended to work, as it relates to back pay and front pay damages[5].

16   However, because Mr. Mort did not other disclose relevant inputs, such as a calculation of

17   anticipated pay raises, promotions, or other adjustments to his salary, Mr. Mort may not present

18   evidence of these factors. *See Bonzani v. Shinseki*, 2014 WL 66529, at *4 (E.D. Cal. Jan. 8, 2014)

19   (finding plaintiff's failure to "timely provided any information concerning the calculation of his

20   lost-benefits damages until after discovery had closed" violated Rule 26(a) and (e) such that the

21   court vacated the trial date to allow defendant to conduct the discovery on these issues).

22         Turning to the question of non-economic damages, such as pain and suffering or

23   emotional distress, USPIS argues Mr. Mort should not be permitted to argue a specific amount to

24   the jury because he did not provide a computation of those damages. (Doc. 106 at 4; citing

---

[5] Generally, back pay should be denied only in limited circumstances and only where it is unnecessary to furthering the goal of eradicating discrimination or to make the plaintiff whole. *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir.1978). "Where racial discrimination is concerned, 'the (district) court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.' " *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975).

1  *Sandoval v. Am. Bldg. Maintenance Indus., Inc.*, 267 F.R.D. 257, 282 (D. Minn. 2007) (citing

2  cases); *see also First v. Kia of El Cajon*, 2010 WL 3069215, at *2 (S.D. Cal. Aug. 4, 2010) (not

3  requiring plaintiff to provide calculation of emotional distress damages where plaintiff intended

4  to let jury decide that question, but warning plaintiff "that if he is going to suggest a specific

5  amount to the jury for emotional distress damages and fails to provide Defendant with a

6  calculation of that amount as required by Rule 26(a)(1)(A)(iii), Plaintiff may be foreclosed from

7  suggesting that specific amount for emotional distress damages to the jury at trial."). Mr. Mort did

8  not rebut this argument but merely stated that such damages will be determined "on the testimony

9  of Plaintiff and the evidence adduced at trial." (Doc. 122 at 3.) The Court construes Mr. Mort's

10  response as not intending to introduce a specific amount to the jury. Accordingly, this portion of

11  USPIS's motion will be granted as unopposed.

12      As set forth above, Mr. Mort may testify to the amount his salary was before termination

13  and how many years he intended to work. Except as to this testimony, USPIS's Motion in Limine

14  No. 8 is **GRANTED**.

15  **I.      USPIS's Motion in Limine No. 9 (Doc. 107) – Evidence of Equitable Issues**

16      USPIS's Motion in Limine No. 9 asks the Court to prohibit presentation to the jury of

17  evidence that is relevant only to equitable issues, including back pay, front pay, and the after-

18  acquired evidence defense. (Doc. 107 at 3.) USPIS argues that these remedies and related

19  defenses must be resolved by the Court, not the jury. *See, e.g.*, *Lutz v. Glendale Union High*

20  *School*, 403 F.3d 1061, 1069 (9th Cir. 2005) ("[W]e hold that there is no right to have a jury

21  determine the appropriate amount of back pay under Title VII, and thus the ADA, even after the

22  Civil Rights Act of 1991. Instead, back pay remains an equitable remedy to be awarded by the

23  district court in its discretion."); *Malone v. Potter*, 2009 WL 10672769, at **1-2 (C.D. Cal. Feb.

24  27, 2009) (back pay and front pay are equitable remedies that must be tried to the Court, not the

25  jury); *McKennon*, 513 U.S. at 361-63 (recognizing that after-acquired evidence of wrongdoing is

26  relevant to the equitable considerations a court must consider when formulating equitable awards,

27  such as back pay). Because the jury will not decide these issues, they have no relevance during

28  trial. *See* Fed. R. Evid. 401, 402.

In light of the Court's ruling on USPIS's Motion in Limine No. 3, Mr. Mort does not oppose this request. (*See* Doc. 123 at 2.) The Court will hear any admissible evidence of equitable remedies and defenses only after the jury makes the liability determination. Accordingly, USPIS's Motion in Limine No. 9 is **GRANTED**.

**J.      Mr. Mort's Motion in Limine No. 1 (Doc. 108) – Evidence that Reflects the Impact to Taxpayers or Users of United States Postal Service's Services**

Mr. Mort's Motion in Limine No. 1 seeks to exclude evidence, argument, or reference regarding the effect of any potential judgment in Mr. Mort's favor on United States federal taxpayers or users of the United States Postal Service's services. (Doc. 108 at 1-2.) Courts typically preclude evidence related to the potential financial repercussions on state or federal government defendants, including "any statements about the State of California's finances, taxpayers paying a judgment, or how much it would cost the state" to provide compensatory relief. *Emery v. Harris*, 2014 WL 467081, at *5 (E.D. Cal. Feb. 5, 2014); *see also Willis v. City of Fresno*, 2013 U.S. Dist. LEXIS 166722, at *5 (E.D. Cal. Nov. 21, 2013).

USPIS does not oppose this motion. (Doc. 124.) Mr. Mort's Motion in Limine No. 1 is **GRANTED** as unopposed.

**K.      Mr. Mort's Motion in Limine No. 2 (Doc. 109) – Mr. Mort's Retirement Benefits**

Mr. Mort's Motion in Limine No. 2 seeks to exclude all evidence of the retirement benefits he received since his termination. (Doc. 109 at 1.) Mr. Mort argues that because he is seeking to recover lost wages, evidence of receipt of retirement benefits should be excluded under the collateral source rule. (*Id.*) For actions brought in federal court, the collateral source exists only under federal common law, not under the Federal Rules of Evidence. *McLean v. Runyon*, 222 F.3d 1150, 1155-56 (9th Cir. 2000). The collateral source rule prevents defendants from reducing their liability for damages by evidencing benefits received by the plaintiff from an independent, or collateral, source. *Id.*; *see also Kauffman v. Sidereal Corp.*, 695 F.2d 343, 346-47 (9th Cir. 1983). "When a case is being heard in federal court, the evidentiary, as opposed to the substantive, aspects of the collateral source rule are governed by the Federal Rules of Evidence, particularly Rules 401, 402, and 403." *Quintero v. United States*, 2011 WL 836735, at *5 (E.D.

23

1   Cal. Mar. 2, 2011) (quoting *England v. Reinauer Transp. Cos., L.P.*, 194 F.3d 265, 273 (1st Cir.

2   1999)). To the extent that receipt of unemployment benefits is relevant for purposes other than

3   reducing a damage award, "[t]he court may exclude relevant evidence if its probative value is

4   substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

5   the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

6   evidence." Fed. R. Evid. 403.

7          Regarding evidence presented to the jury, Mr. Mort argues that evidence of his retirement

8   benefits may unfairly prejudice or confuse the jury "as falling within Plaintiff's duty to mitigate

9   his damages." (Doc. 109 at 3.) On the other hand, USPIS argues the Mr. Mort's receipt of

10  retirement benefits is pertinent to the jury's ultimate determination on non-economic damages,

11  such as stress caused by financial loss. (Doc. 125 at 2.) The Court agrees in part.

12         It is possible that evidence that Mr. Mort received retirement benefits since his

13  termination relates to USPIS's potential defense to Mr. Mort's non-economic damages claims.

14  However, this is only if Mr. Mort claims that the state of his finances, due to his firing, caused

15  him emotional distress damages. If he does not claim this, the evidence may not be presented to

16  the jury unless some other basis for the admission of the evidence is produced to the Court

17  outside the presence of the jury. As to lost wages, concerns about jury confusion are inapplicable

18  because the jury will not determine Mr. Mort's lost wages. (See Doc. 112 at 23 (Pretrial Order

19  noting that "issues of back pay and front pay will be determined by the Court, as necessary").)

20         Regarding the application of the collateral source rule to Mr. Mort's equitable claims, the

21  Ninth Circuit permits district courts to consider employment benefits received by the plaintiff to

22  determine lost wages. *Naton v. Bank of California*, 649 F.2d 691, 700 (9th Cir. 1981) (affirming

23  district court's damages award that considered the workers' compensation benefits plaintiff

24  received to offset the back pay award). In employment discrimination cases where the Court

25  determines an equitable award, exclusion of benefits funded at least in part by the defendant

26  employer "allows a 'windfall' to be enjoyed by the injured party rather than by the wrongdoer."

27  *Id.*; *see also McLean*, 222 F.3d at 1156 (holding collateral source rule inapplicable to worker's

28  compensation benefits "paid entirely by USPS" because by the terms of the workers'

1  compensation agreement, the employer agency reimburses payments to injured employees).

2  USPIS alleges that Mr. Mort receives disability income pursuant to the Federal Employees

3  Retirement System . (Doc. 125 at 3.) Benefits under FERS are funded almost entirely by the

4  federal agency that employed the recipient of the benefits. (*Id.*) Accordingly, USPIS primarily

5  funded Mr. Mort's alleged "collateral source" benefit. Mr. Mort does not contest this point.

6  Because USPIS has funded part of Mr. Mort's income for the past nine years since his

7  termination, excluding this evidence when determining the amount of equitable back pay to

8  award Mr. Mort would, in essence, create a double recovery for Mr. Mort. *See Viveros v.*

9  *Donahoe*, 2012 WL 6021667, at \*\*9-10 (C.D. Cal. Nov. 30, 20212) (finding collateral source rule

10  inapplicable to unemployment benefits funded by the Postal Service and considering it as offset

11  to back pay). Because evidence of Mr. Mort's retirement benefits is relevant both to the jury's

12  determination of non-economic damages and to the Court's determination of equitable remedies,

13  the Court finds the collateral source rule does not apply and **DENIES** Mr. Mort's Motion in

14  Limine No. 2.

15  **L.**     **Mr. Mort's Motion in Limine No. 3 (Doc. 110) – Evidenced Not Yet Produced**

16  Mr. Mort's Motion in Limine No. 3 requests that the Court preclude USPIS from offering

17  at trial any testimony or evidence which was not timely produced in discovery. (Doc. 110 at 1.)

18  Mr. Mort argues that if a party does not comply with the discovery requirements of Federal Rule

19  of Civil Procedure 26(a) and (e), the party is not allowed to use that information or witnesses not

20  previously disclosed. (*Id.* at 2 (citing Fed. R. Civ. Pro. 37(c)(1)). Though Rule 37 typically

21  confines parties to the evidence produced during discovery, it creates an exception when the party

22  can show failure to produce it was "substantially justified or is harmless." Fed. R. Civ. P.

23  37(c)(1). USPIS argues Mr. Mort has not sufficiently identified which pieces of evidence or

24  witnesses he seeks to preclude. (Doc. 112 at 4.) However, the Court's Pretrial Order requires that

25  all exhibits, even those for purposes of impeachment, have been disclosed and produced by the

26  parties by July 5, 2022. (Doc. 112 at 18.) Accordingly, Mr. Mort's Motion in Limine No. 3 is

27  **GRANTED**. If either party seeks to introduce evidence at trial, which was not disclosed

28  previously, they SHALL raise the topic in advance outside the presence of the jury.

**M.      Mr. Mort's Motion in Limine No. 4 (Doc. 111) – Testimony of Drs. Allen and Hibler**

Mr. Mort's Motion in Limine No. 4 seeks to exclude or to limit the testimony of two of USPIS's expert witnesses—Dr. Martin G. Allen and Dr. Neil S. Hibler. (Doc. 111 at 1.) As requested by USPIS, Dr. Allen and Hibler performed fitness for duty examinations on Mr. Mort in 2012. USPIS disclosed these experts at the proper time during discovery, but Mr. Mort contends the disclosures did not comply with either Federal Rule of Civil Procedure 26(a)(2) subdivision (B) or (C). (*Id.* at 2-3.) Mr. Mort also argues that their reports are irrelevant to any issue not already withdrawn by the parties, because they agreed not to present evidence regarding any specific diagnosis of a mental health condition. (*Id.* at 4.) Should the Court not wholly exclude Dr. Allen and Dr. Hibler from testifying, Mr. Mort asks the Court to limit these witnesses' testimony to exclude any opinion regarding Mr. Mort's credibility as a witness or individual. (Doc. 111 at 5-7.)

Regarding Mr. Mort's objections to these witnesses under Rule 26, he argues that the disclosure of the experts and their reports did not comply with the requirements under either subdivision. In particular, under Rule 26(a)(2)(B), parties wishing to present an expert witness must:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Mr. Mort contends that the expert reports submitted with the disclosures did not contain a complete statement of all opinions they plan to proffer during testimony. (Doc. 111 at 2-3.) Rather, Drs. Allen's and Hibler's reports only contain contemporaneous findings from Mr. Mort's fitness for duty examinations in 2012. (Doc. 127-6 at 1; 127-7 at 1.) According to Mr. Mort, their reports do not satisfy the Rule 26 rule because they amount "'treating physician notes' that do not contain the [sic] opinions." (Doc. 111 at 3.) Because they are "treating physicians," Mr. Mort

argues that USPIS should have complied with subdivision (C) of Rule 26(a)(2). (*Id.*) Mr. Mort argues the reports likewise fail under this subsection for not providing a summary of opinions to which the witness is expected to testify. (*Id.*) With its response, USPIS submitted the challenged reports of Drs. Allen and Hibler. USPIS argues Drs. Allen and Hibler are not "treating physicians" because they were hired by USPIS to evaluate Mr. Mort in isolated instances. (Doc. 127-6; 127-7.)

Regardless of whether Drs. Allen and Hibler are considered treating physicians under subdivision (C) or testifying experts under subdivision (B), the parties' dispute turns on whether the reports contain a sufficient summary of opinions which have sufficient relevancy to the issues in this case. The Court has reviewed the reports and finds they include a sufficient summary and detailed explanation of their opinions to have complied with Rule 26(a)(2). Both reports expressly begin with a summary of the witnesses' opinion regarding Mr. Mort's fitness for duty in returning to work. (Doc. 127-6 at 1; 127-7 at 1.) Particularly, both Drs. Allen and Hibler recommended that Mr. Mort return to limited duty, excluding any work with firearms and to avoid any aggressive law enforcement duties. (Doc. 127-6 at 1; 127-7 at 1.) According to USPIS, these opinions are relevant to show its motivation when requesting that Mr. Mort undergo multiple fitness for duty examinations. (Doc. 127 at 2.) Mr. Mort's claims for discrimination allege USPIS perceived Mr. Mort as having a mental disability and requiring Mr. Mort to undergo multiple fitness for duty examinations while USPIS placed Mr. Mort on administrative leave. (*See id.* at 2-3.) The opinions in Drs. Allen and Hibler's report have probative value regarding USPIS's motive for requiring the multiple fitness for duty examinations. *See* Fed. R. Evid. 403.

Regarding Mr. Mort's argument the reports are irrelevant because they pertain to a specific diagnosis of a mental condition, an issue that the parties have abandoned, USPIS responds that it does not intend to intend to offer this evidence for that purpose. (Doc. 127 at 4.) Should USPIS attempt offer such opinions during trial, Mr. Mort may make appropriate objections at that time.

Finally, Mr. Mort argues that if the Court declines to wholly preclude Drs. Allen and Hibler from testifying, their testimony should not include any opinions regarding Mr. Mort's

overall credibility. Generally, witnesses, including expert witnesses, may not opine on the credibility or truthfulness of another witness. *United States v. Rivera*, 43 F.3d 1291, 1295 (9th Cir. 1995) ("More particularly, an expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility."); *see also United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973) ("Credibility, however, is for the jury—the jury is the lie detector in the courtroom."). USPIS asks the Court to defer ruling on this issue but did not point to any authority which would make such opinions admissible. Drs. Allen and Hibler may, if within their appropriate scope of testimony, proffer evidence regarding certain facts which bear on Mr. Mort's credibility, but they may not proffer their *opinions* regarding whether Mr. Mort is a credible witness or individual.

For these reasons, Mr. Mort's Motion in Limine No. 4 is **DENIED** in part and **GRANTED** in part. USPIS may offer the relevant opinions and testimony of Drs. Allen and Hibler, but they may not opine regarding Mr. Mort's general truthfulness or credibility.

IT IS SO ORDERED.

Dated:   **August 9, 2022**

UNITED STATES DISTRICT JUDGE