**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THEODORE W. MORT,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MEGAN J. BRENNAN, POSTMASTER GENERAL UNITED STATES POSTAL SERVICE, and DOES 1-10, inclusive,<br><br>　　　　　Defendant. | Case No. 1:19-cv-00652-JLT-SKO<br><br>ORDER OVERRULING IN PART AND SUSTAINING IN PART PLAINTIFF'S OBJECTIONS TO BILL OF COSTS<br><br>(Doc. 217) |

## I.   INTRODUCTION

Theodore W. Mort brought this civil rights action against his former employer, the United States Postal Service, alleging discriminatory and retaliatory conduct in violation of multiple federal statutes. (Doc. 1.) After a trial, the jury returned a verdict in favor of Defendant. (Doc. 214.)

Defendant filed a bill of costs on seeking $45,483.74. (Doc. 216 at 1.) Plaintiff filed objections to the bill of costs in total due to his particular circumstances, and alternatively objected to the imposition of travel and lodging expenses for witnesses. (Doc. 217.) Defendant filed a response to Plaintiff's objections. (Doc. 218.)

In response to the Court's request for a supplemental filing (Doc. 219), Plaintiff provided details regarding his current income and expenses. (Doc. 220.) For the reasons discussed below,

1

Plaintiff's objections are **OVERRULED IN PART AND SUSTAINED IN PART** and the Clerk of Court is directed to tax costs in the amount of $25,770.21.

## II.    LEGAL STANDARD

Costs are awarded to the prevailing party in civil actions as a matter of course absent express statutory provision, "unless the court otherwise directs." Fed. R. Civ. P. 54(d). The rule creates a presumption for awarding costs to prevailing parties; the losing party must show why costs should not be awarded. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944-45 (9th Cir. 2003). "Appropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247-48 (9th Cir. 2014). This list is not "exhaustive . . . of good reasons for declining to award costs, but rather a starting point for analysis." *Id*. at 1248 (citation and internal quotation marks omitted).

## III.    DISCUSSION

Plaintiff objects to the imposition of costs by asserting that Defendant should be denied any costs award under the "unclean hands" doctrine. (Doc. 217 at 2.) In the alternative, Plaintiff specifically contests the imposition of witness travel and lodging expenses, claiming them to be an "excessive" cost that would render him indigent and "deter other litigants with limited financial resources from pursuing similar, but meritorious, claims." (*Id.* at 3.) Defendant rejects Plaintiff's allegation of "unclean hands" and counters by asserting that Plaintiff failed to timely file his opposition. (Doc. 218.) Furthermore, Defendants allege Plaintiff did not sufficiently support his claims of indigency or that imposing witness costs would produce a chilling effect on future litigation. (*Id.*)

A.    Timeliness

Defendant objects to Plaintiff's motion as untimely under this Court's Local Rules. (Doc. 218 at 1-2.) Local Rule 292(c) imposes a seven-day deadline upon "[t]he party against whom costs are claimed" to file any "specific objections to claimed items with a statement of grounds for objection." "If no objection is filed, the Clerk shall proceed to tax and enter costs. If

2

objections are filed, they should state specific objections to claimed items with a statement of grounds thereof." L.R. 292(d). "On motion filed and served within seven (7) days after notice of taxing of costs has been served, the action of the Clerk may be reviewed by the Court as provided in Fed. R. Civ. P. 54(d)." L.R. 292(e).

Defendant filed his bill of costs on May 11, 2023. (Doc. 216.) Accordingly, Plaintiff's objections pursuant to L.R. 292(c) were due to be filed on May 18, 2023. *See* Fed. R. Civ. P. 6(a) (excluding the day of the triggering event and counting weekends). Plaintiff filed his objections on May 22, 2023, four days past the deadline. (Doc. 217.) In his motion, Plaintiff alleged a general objection to costs, as well as specific objections to witness fees. (*Id.*) These latter, specific objections are covered under L.R. 292(c) and were not raised in a timely manner. Plaintiff's general objection, however, is arguably covered under L.R. 292(e) and is not yet untimely. *See King v. Biter*, 2023 WL 3752530, at fn. 1 (E.D. Cal. Jun. 1, 2023); *Jack v. Pearson*, 2020 WL 5257605, at *2 (E.D. Cal. Sept. 3, 2020). Though the Court could conclude Plaintiff's specific objections are untimely and decline to rule on them, the delay of four days past the deadline is so minor that the Court nonetheless will consider Plaintiff's specific objections. *See Bryant v. Gallagher*, 2017 WL 2671013, at *1 (E.D. Cal. Jun. 21, 2017) (considering a party's specific objections even though the "objections may be disregarded as untimely.").

B.      Plaintiff's Unclean Hands Objection

Plaintiff objects to the imposition of costs on the ground that Defendant has "unclean hands." (Doc. 217 at 2.) "The unclean hands doctrine bars recovery by a [party] (1) whose behavior is tainted by inequity or bad faith, (2) that occurred in acquiring the right he now asserts." *Ample Bright Dev., Ltd. v. Comis Int'l*, 913 F. Supp. 2d 925, 940 (C.D. Cal. 2012) (citation omitted). The doctrine requires some wrongful act or misconduct by the party seeking recovery. *See Natomas Gardens Inv. Group, LLC v. Sinadinos*, 2010 WL 1659195, at *5 (E.D. Cal. Apr. 22, 2010); *Ganley v. County of San Mateo*, 2007 WL 902551, at *5 (N.D. Cal. Mar. 22, 2007) ("The doctrine of unclean hands generally applies to prevent a party from obtaining equitable relief and profiting from their own misconduct."). Plaintiff alleges that Defendant's witnesses made false statements under oath, thus triggering the doctrine and barring recovery.

(Doc. 217 at 2.) Assuming for the sake of argument only that the unclean hands doctrine applies to the award of costs, the Court finds that Defendant did not engage in a wrongful act or misconduct that would bar recovery. *See Compass Bank v. Morris Cerullo World Evangelism*, 2015 WL 8492499, at *2 (S.D. Cal. Dec. 10, 2015) (finding that plaintiff's allegation of unclean hands failed because there was no evidence to support his claims of discovery abuse beyond those already addressed by the court). As Defendant points out, the jury rejected Plaintiff's argument that witnesses lied under oath, (*see* Doc. 218 at 4), and Plaintiff presents no other persuasive evidence that Defendant engaged in bad faith litigation practices. *See Fowler v. Cal. Highway Patrol*, 2014 WL 3965027, at *6 (N.D. Cal. Aug. 13, 2014) (finding that plaintiff presented no evidence that Defendant engaged in bad faith litigation practices or approached the litigation with unclean hands, thus plaintiff could not overcome the presumption in favor of an award). The doctrine of "unclean hands" is not applicable here.

C.   Plaintiff's Objections to the Requested Witness Fees

In the alternative, Plaintiff specifically objects to Defendant's request for $19,713.49 in witness fees. (*See* Docs. 216 at 1; 217 at 3.) Plaintiff advances a specific challenge to the reasonableness of the charged fees. He also argues the Court should exercise its discretion and decline to award these costs.

1.   *Reasonableness of the Witness Fees Incurred*

As a general matter, witness fees are recoverable costs under 28 U.S.C. §§ 1920(3) and 1821. Plaintiff does not dispute this but argues that witness costs were unreasonably accrued "for days of lodging when Defendant knew [the witnesses] would not be called for days." (Doc. 217 at 3.) However, a court may award witness fees that are not limited to just the days the witness testified. *See Duhn Oil Tool, Inc. v. Cameron Intern. Corp.*, 2012 WL 4210104, at *4 (E.D. Cal. Sept. 19, 2012); *Am. Color Graphics, Inc. v. Travelers Prop. Cas. Ins. Co.*, 2007 WL 832935, at *4 (N.D. Cal. Mar. 19, 2007); *see also* 28 U.S.C. §§ 1821(b)-(d); *Smith v. Bd. of Sch. Com'rs of Mobile County*, 119 F.R.D. 440, 445-46 (S. D. Ala. Mar. 22, 1988) ("The availability of a witness to testify when called. . . cannot always be directed during the actual course of trial. To deny defendants the costs incurred by their efforts to insure the immediate availability of their

4

witnesses would be to impose a requirement of clairvoyance upon [counsel] which this Court is not prepared to do."). Though certainly on the high end for a case of this nature, the requested travel and lodging costs of witnesses were not inherently "excessive" or unreasonable.

        2.        Consideration of the *Escriba* Factors

As mentioned, appropriate reasons for denying costs include, but are not limited to: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba*, 743 F.3d at 1247-48.

As an initial matter, Plaintiff contends that he pursued his claims in good faith. (*See* Doc. 217 at 2.) The Court agrees, though this is not a sufficient reason alone to deny costs. *See Bommarito v. Nw. Mut. Life Ins. Co.*, 2018 WL 4657243, at *3 (E.D. Cal. Sept. 26, 2018) ("Good faith by itself is insufficient to justify denying costs. Parties are legally and professionally obligated to act in good faith."); *Van Horn v. Dhillon*, 2011 WL 66244, at *6 (E.D. Cal. Jan. 10, 2011) (refusing to deny costs on grounds of good faith "because plaintiff was at all times legally and ethically obligated to act in good faith."). Nor does the Court view this case to be a particularly difficult or novel one. *See Ceja-Corona*, 2015 WL 1276695, at *3 ("Where a plaintiff's litigation clarifies the law or paves the way for future litigation, this factor weighs against imposing costs."). The Court does not downplay the importance of this case to Plaintiff personally. However, Plaintiff does not allege that this case carries great *public* importance or significance. *See id.* at *4 (finding that the plaintiff's case did not provide an issue of public importance when she "did not litigate in a developing area or clarify existing law," nor did the case appear "close or difficult, [or] present any novel arguments or issues of law"); *Steffens v. Regus Group, PLC*, 2012 WL 628235, at *2 (S.D. Cal. 2012) (finding that plaintiff's discrimination case was of no public significance where he failed to "test the boundaries of the law," but rather presented "straightforward claims under settled law," and even though "the public may have a general interest in workplaces being discrimination-free. . . there is nothing significant about this case in particular."); *see also Eaglesmith v. Ray*, 2013 WL 1281823, at *4 (E.D. Cal. Mar. 26, 2013) ("[E]ven though Plaintiffs' claims involved discrimination at Plumas

5

1   County public schools, the relief they sought, if obtained, was limited to them with no greater
2   implications. Therefore, the Court is not persuaded that Plaintiffs' claims involved issues of
3   substantial public importance."). The substantial public importance factor, therefore, does not
4   weigh against imposition of costs in this case.

5   Plaintiff argues that the imposition of costs would render him indigent and produce a
6   chilling effect on future civil rights litigation. (*See* Doc. 217 at 3.) In determining whether costs
7   should be rejected, "[i]t is not necessary to find that the plaintiffs in question are currently
8   indigent; rather, the proper inquiry is whether an award of costs might make them so." *Rivera v.*
9   *NIBCO*, 701 F. Supp. 2d 1135, 1143 (E.D. Cal. 2010) (citation omitted). Where indigency is
10  claimed, the court may only consider the losing party's financial resources and ability to pay at
11  "the time the costs were initially taxed." *Stanley*, 178 F.3d at 1080. Also relevant to the Court's
12  consideration is the amount of the requested cost award. *See Save our Valley*, 335 F.3d at 945
13  ("[I]n the rare occasion where severe injustice will result from an award of costs (such as the
14  injustice that would result from an indigent plaintiff's being forced to pay tens of thousands of
15  dollars of her alleged oppressor's legal costs), a district court abuses its discretion by failing to
16  conclude that the presumption has been rebutted.").

17  Plaintiff asserts that his only source of income is his monthly disability benefits, and "it is
18  unlikely [he] will secure employment in the near future." (Doc. 217 at 3.) In his supplemental
19  filing, he details his income and expenses, indicating that he anticipates his total monthly income
20  to be $4,173 (or $50,076 per year). (Doc. 220 at 2.) He further anticipates that his total monthly
21  expenses will be approximately $1,288, leaving him with $2,885 remaining in his monthly
22  budget, a sum that would permit him to cover some costs award. (*See id*. at 3.) However, he also
23  indicates that he has spent or will be spending more than $152,344 in expenses of attorney's fees[1]
24  in conjunction with this lawsuit. (*Id*. at 5.) Considering all these factors, the Court concludes that
25  Plaintiff has established that he is of modest financial means. Even where a costs award would

---

[1] The statement is ambiguous whether these costs are associated with fees or costs or both. In the Court's experience, these cases are usually taken on with a contingent fee arrangement. In addition, the Court is unclear whether this amount is limited only to this litigation or if it includes fees/costs for pursuing the EEOC/administrative process.

6

1  not render a plaintiff entirely indigent, a court may reduce a costs award to reflect the Plaintiff's
2  ability to pay. *Am. Gen. Life Ins. Co. v. Nelson*, No. C19-5095BHS, 2021 WL 75252, at *2 (W.D.
3  Wash. Jan. 8, 2021) (reducing costs award by $1,000 where plaintiff, though not claiming
4  indigency, had a disabled child, impacting his ability to pay); *Gurshin v. Bank of Am., N.A.*, No.
5  2:15-CV-00323-GMN-VCF, 2019 WL 6134469, at *2 (D. Nev. Nov. 19, 2019) (reducing costs
6  request of approximately $30,000 to $5,000 where plaintiff earned $30,000 per year and would
7  have to sell her home to pay the full award).
8        Plaintiff relatedly argues that imposing "high costs" on losing civil rights plaintiffs may
9  chill civil rights litigation. *See Stanley*, 178 F.3d at 1079-80. A plaintiff's financial means is
10 relevant to the determination of whether imposition of costs could create a chilling effect. *Ceja-*
11 *Corona v. CVS Pharmacy, Inc.*, No. 1:12-cv-1703-AWI-SAB, 2015 WL 1276695, at *4-5 (E.D.
12 Cal. Mar. 19, 2015) (finding a $6,000 cost would not chill future litigation, despite the losing
13 party's annual income of $24,000, considering a $10,000 class representative fee award); *see also*
14 *Teater v. Pfizer, Inc.*, 2013 WL 5719222, at *5 (D. Or. 2013) (finding $7,200 in costs would be
15 unduly burdensome in light of plaintiff's inability to work due to disability and her modest
16 income of $1,233 per month in social security and food stamps); *Romero v. Frederick*, No. C05-
17 03014 -MJJ, 2008 WL 142359, at *1 (N.D. Cal. Jan. 14, 2008) (finding that $7,213 in taxed costs
18 would be a harsh result that could chill future litigation when applied to a plaintiff who earned no
19 more than $15 per hour). Here, the total costs bill of $45,483.74, of which $19,713.49 consists of
20 witness fees, is substantially higher than the costs deemed burdensome in *Teater* and *Romero*, and
21 more closely resembles the amount *Stanley* rejected as too "high." *Stanley*, 178 F.3d at 1080 ("the
22 imposition of such high costs [$46,710.97] on losing civil rights plaintiffs of modest means may
23 chill civil rights litigation in this area.").
24       The Court also acknowledges the economic disparity between the parties. The
25 Defendant's costs were borne by the federal government, which is in a vastly different financial
26 situation than Plaintiff. *See Conservation Cong. v. U.S. Forest Serv.*, 2015 WL 4941520, at *2
27 (N.D. Cal. Aug. 19, 2015) ("While virtually any litigant will suffer an economic disparity when
28 compared to the federal government, not every litigant will face such a great disparity as the

7

parties here[.]"). This factor weighs in favor of denying costs. *See Ass'n of Mexican-American Educators v. California*, 231 F.3d 572, 592 (9th Cir. 2000) (affirming the district court's denial of costs because, inter alia, there was a great economic disparity between the plaintiff and defendant).

Overall, the Court concludes that it is appropriate to reduce the costs award considering Plaintiff's relative ability to pay and the possibility that costs award in the full amount would chill future civil rights litigation. The Court finds that reducing the request by the amount of witness fees, or $19,713.49, is warranted. Therefore, the total costs award is reduced to $25,770.21 ($45,483.74-$19,713.49).

## IV.   CONCLUSION

For all the reasons set forth above,

1. Plaintiff's objections to the bill of costs (Doc. 217) are **OVERRULED IN PART AND SUSTAINED IN PART**.
2. The Clerk of the Court is directed to tax costs in the amount of $25,770.21.

IT IS SO ORDERED.

Dated:   **November 30, 2023**

UNITED STATES DISTRICT JUDGE